(No. 30734.—

CHICAGO PARK DISTRICT, Appellee, *vs.* BOONE G. HARRIS *et al.,* Appellants.

*Opinion filed January 19, 1949.*

WEISSENBACH, HARTMAN, CRAIG & OKIN, (HARRY OKIN, and CECIL E. MAGIN, of counsel,) all of Chicago, for appellants.

PHILIP A. LOZOWICK, and FRANK S. RIGHEIMER, (FRANK S. RIGHEIMER, JR., and ROBERT F. DEWEY, of counsel,) all of Chicago, for appellee.

Mr. JUSTICE GUNN delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Cook County taking and fixing the value through eminent domain of certain real estate of appellants, required by the Chicago Park District for park purposes. A direct

appeal to this court is authorized by section 12 of the Eminent Domain Act. Ill. Rev. Stat. 1947, chap. 47, par. 12.

The point in controversy is whether or not the Chicago Park District had jurisdiction to condemn the property of appellants, as no other error is assigned or argued. After the petition was filed appellants made a motion to dismiss on the ground that it failed to show the proper legal authority in the Chicago Park District to condemn the premises for the reason it did not disclose that the population within the said district was that required by the statute of the State of Illinois, authorizing the acquisition of land for park purposes, nor does it appear that the lands sought to be acquired are of the kind and character authorized by law, or that the petitioner has done and performed all acts and things required by statute before instituting eminent domain proceedings. The motion to dismiss was denied by the court and the cause eventually went to trial, a verdict of the jury fixing the value of the property rendered, and a judgment for taking entered by the court. As stated, the sole question raised on this appeal is the jurisdiction of the court to entertain the eminent domain proceedings to acquire land for park purposes.

The appellee urges that the appeal should be dismissed, or, in the alternative, the judgment of the court below affirmed, because the abstract is insufficient to comply with Supreme Court Rule 38. It is true the abstract of the notice of appeal is rather deficient in that it only refers to the denial of the motion to dismiss, which here is an interlocutory order, but the notice of appeal also referred to the final judgment, which gives this court jurisdiction to review the entire record. While the abstract is insufficient in such respect, and we have been compelled to examine the record to ascertain the actual notice of appeal, yet, it does disclose a proper notice of appeal sufficient to give us jurisdiction, since the final judgment is included in the notice. *Watkins Co.* v. *Salyers,* 384 Ill. 369.

While appellants suggest that the appellee could have supplied the deficiency in the abstract by a supplemental or additional abstract, still, we must remind counsel that the abstract is for the purpose of presenting the matters argued in the case and to avoid searching the record to ascertain whether the parties are properly in this court. We do not approve of making the abstracts so insufficient as to require a search, and ordinarily it justifies dismissal of the case, but in view of the fact that appellee was fully aware of the appellants' position, and both parties have argued the substantial matter in issue, we are regarding it as sufficient to consider the merits of the case.

The point argued by appellants upon which they base their claim that appellee, Chicago Park District, was without jurisdiction to maintain eminent domain, is predicated upon the act of 1911, entitled "An Act to enable park commissioners to enlarge park systems under their control by acquiring additional lands or territory for park purposes, and to pay for the lands or territories thus acquired," approved May 25, 1911, and in force the same day by virtue of an emergency clause.

Section 1 of the act reads as follows: *"Be it enacted by the People of the State of Illinois, represented in the General Assembly:* That whenever in any park district under the control of any public park commissioners located in cities having a population in excess of one hundred thousand (100,000) where the number of inhabitants of such park district shall exceed the ratio of five hundred of inhabitants of such district to each one acre of parks now located in said district under the control of such public park commissioners according to the last public census taken in said district, then said public park commissioners shall be and are hereby authorized to acquire by purchase, gift, condemnation or otherwise any parcel or parcels of land lying within said district or territory under the control of said public park commissioners for the purpose of increasing

the present park areas or of creating additional parks and pleasure grounds." Laws of 1911, p. 443.

When this section is broken down into its component parts it empowers a park district in cities of 100,000 inhabitants to acquire *additional* land for park purposes within the district where there is then sufficient population in the district to make a proportion of more than 500 population to one acre of park. These conditions must exist before a park district, coming within the provisions of said act, may exercise the power of eminent domain for obtaining *additional* land for public parks. And, if it so be held that said act applies to the present case, the power of appellee to acquire additional land could be exercised only when, in the present park district, the proportion between population and acreage is more than 500 to 1.

Other portions of the 1911 law are relevant. Section 2 provides that the powers granted by section 1 "are in addition to the powers heretofore granted to any of said boards of public park commissioners by any Act of the General Assembly of this State." Section 4 provides that "Lands and territory for additional parks as authorized by this Act may be acquired from time to time until the ratio of the number of inhabitants as shown by the last public census in said district under the control of any of said boards of public park commissioners shall be that of not more than five hundred inhabitants of said district to each one acre of public parks located in said district." And section 6 of the act provides such boards of commissioners "shall have the same control and power of the lands or territory taken under this Act as are, or may be, by law invested in it, of and concerning the parks, boulevards and driveways now under its control." The emergency clause recites that "There is a necessity for the immediate acquisition of additional lands for park purposes as contemplated in this Act," requiring it to become effective from and after its passage. All of these provisions of the act indicate that

the General Assembly granted authority to all park districts in the State, which could comply with the conditions specified in section 1, to acquire additional land, but that right could be exercised only when the population of the district, including the additional land acquired, reached the proportionate ratio of more than 500 population to each acre of park.

Assuming that the act of 1911 does apply to the Chicago Park District, the latter would have authority to exercise the right to acquire additional land *within* the city, since it is stipulated that the requisite condition of proportion between the population of the city and of park area exists. This question need not be further pursued, for we do not believe that the act of 1911 applies to the Chicago Park District. The latter was established and created by "An Act in Relation to the Creation, Maintenance, Operation and Improvement of the Chicago Park District," approved July 10, 1933. This act consolidated all of the park districts, some twenty-two parks in number, in the city of Chicago, and by the express terms made the Chicago Park District a body corporate, with power to acquire and hold real estate, to sue and be used, have a common seal, enter into contracts, and do other things necessary for corporate purposes. It also provided by section 7 (Ill. Rev. Stat. 1947, chap. 105, par. 333.7,) that it should be vested with all of the *"powers heretofore vested in park districts* or corporate authorities whose authority is abrogated by this Act or by the operation thereof;" and that such park district can acquire lands and other rights pertaining to a park by virtue of section 15 of the act. (Par. 333.15.) Section 15 specifically gives the Chicago Park District power "to acquire * * * by condemnation * * * *any* and *all* real estate lands, riparian estates or rights, and all other property required or needed for any such park, or for parkways, driveways or boulevards, or for extending, adorning, or maintaining the same for the purpose of

establishing, acquiring, completing, enlarging, ornamenting, building, rebuilding and improving public parks, [and many other uses of real estate,] * * * whether such land shall be located within or without such district, if such land is deemed necessary for park purposes * * *."

It will be noted that the power granted by section 15 of the Chicago Park District Act is much broader and comprehensive than the provisions for acquiring land under the law of 1911. For instance, it has necessity for more land than was required to comply with the act of 1911, in that it was able to (a) acquire riparian rights, submerged lands, streets, boulevards, landing fields, shore protection works, wharfs, subways, basins, driveways, and many other uses of real estate which could not have been acquired under the former act; (b) to acquire by condemnation any and all real estate (required or needed) for all of the purposes above mentioned; and (c) to obtain land for such purposes within the district or without the district necessary or needed for park purposes.

Without discussing all of the powers granted there appears this necessary distinction between those of the Chicago Park District and those authorized by the act of 1911, which are conflicting. The act of 1911 allowed only the acquisition of land within the district. The act of 1933 permits the land to be acquired either within or without the district. The act of 1911 permits the acquisition of land only when the park district has 500 population to each one acre, while the act of 1933 permits the district to acquire by condemnation all land needed or required for such park. And, finally, under the act of 1911 the power to acquire additional territory ceases if the district with the added territory has a population of 500 or less to each park acre, while the act of 1933 grants the power to condemn for all of the enumerated purposes, including the *enlargement* of parks, without any restriction whatsoever.

The validity and constitutionality of the Chicago Park District Act was upheld in *People* v. *Kelly*, 357 Ill. 408. And later, in *Kocsis* v. *Chicago Park Dist.* 362 Ill. 24, we held that it was within the power of the legislature to "create any conceivable kind of corporation it deems wise for the more efficient administration of public affairs and endow such public corporation and its officers with whatever powers and functions it deems necessary and proper for the administration of the corporate affairs."

It will be observed, by a comparison of the two statutes, that under the act of 1911 one purpose was contemplated, which was the procurement of additional territory then immediately needed. Under the later act of 1933 the legislature created one park district of all of the parks throughout the city, with powers to meet all conditions it could then contemplate from the trend of modern affairs, and to condemn and acquire land for such purposes. It would be idle to itemize all of the conflicts and repugnancies between the two acts, since the sole question to consider here is whether the powers to condemn as specified in the two acts are repugnant. In determining this question we must remember that the act of 1911 was a general act, effective throughout the State, applying to every city of the requisite population, and meeting the conditions specified therein. The Chicago Park District Act, however, is special not only in powers but in locality, since it is confined entirely to the city of Chicago, and its powers are enumerated so as to embrace everything which may be necessary to carry out the functions of each and every one of the 22 parks included therein, and whose corporate existence and powers were abrogated by it. The many additional purposes for use of land by the Chicago Park District, including boulevards and airports, strongly indicate the General Assembly regarded the Park District Act complete, and its limitations contained within its language. This belief is fortified with

the presumption it knew this court had held the act of 1911 did not apply to Lincoln Park, one of those consolidated into Chicago Park District.

A general statute applies to all within its general purview upon the subject matter, unless a special statute exists to give particularity to the general subject, or creates a different law for a particular locality. A special law, where it applies to a special territory or territories in a different manner, or is a complete act within itself, operates to repeal *pro tanto* the general law to the extent of conflicting with it, or supersedes or constitutes an exception to the general law where there is a conflict between it and the special enactment. (*People ex rel. Fore* v. *Missouri Pacific Railroad Co.* 342 Ill. 226; *Village of Atwood* v. *Cincinnati, Indianapolis and Western Railroad Co.* 316 Ill. 425; *Turley* v. *Arnold,* 384 Ill. 158.) This principle is a general one and is supported by many authorities.

An illustration of the application of the principle is the *Turley case,* which held that a section of the Levee Drainage Act providing for a view of the land by a jury, which might be had at the request of *any party in interest,* was repealed by a later act, providing that the view by the jury was available *to any party in interest who has filed an answer or written request for an examination of the premises in such proceeding prior to such hearing.* It is apparent that a right given to "any party in interest" was limited by a later law limiting such rights to those parties "who had filed an answer or made a demand before the hearing." In the instant case, granting power to condemn any or all real estate needed is certainly in conflict with power to condemn only when a certain proportion between acreage and population exists. So, also, when all of the additional powers and purposes are included in the Chicago Park District Act, it must be concluded that the General Assembly intended the powers to carry out its purposes were sufficient to effectuate its object.

It is contended by appellants that *Wilhelm* v. *Industrial Com.* 399 Ill. 80, is an authority that holds where two acts can possibly be. reconciled they should be so construed. That principle could be applied in the *Wilhelm case* because it involved what was included in the word "employee," and since the relations of master and servant and husband and wife were included in chapters of the statute as being in fact different relations, it was held that the definition of "employee" in the Workmen's Compensation Act did not include a husband working for his wife. We see no application of the principle involved in the *Wilhelm case* to the present cause, since the two statutes could be readily reconciled.

When it is taken into consideration that section 15 of the Chicago Park District Act, authorizing condemnation for a multitude of purposes not included in the first act, permits the taking of land outside of the district, and the taking is not limited to one particular purpose but embraces all purposes, to this extent at least the two acts are repugnant, and consequently we hold that the Chicago Park District is not limited in its right to acquire land by condemnation by anything contained in the said act of 1911.

Appellants also claim that the petition for condemnation is insufficient in that it fails to allege all of the statutory requirements necessary to authorize a condemnation of land. The principal argument to support this position is that concerning the limitation of the act of 1911, which we have just disposed of. We might add, however, that the petition discloses that the Chicago Park District is organized under the law of 1933. It also sets out the specific purpose for which the land is being condemned, a description of the property and the interested parties, and the necessity of acquiring the land. These averments are sufficient to make out a *prima facie* case of power and authority permitting the district to take land for the purposes specified in the act of 1933.

Upon the trial of the case the ordinance designating the need for the land, and directing the district to proceed in court for the purpose, was introduced in evidence, and no evidence to the contrary was offered by appellants.

There are other grounds urged by appellee to sustain the judgment of the circuit court, but, inasmuch as the points above considered are conclusive to sustain the judgment to condemn, a consideration of the other grounds is unnecessary.

We find no error in the judgment of the circuit court of Cook County, and it is accordingly affirmed.

*Judgment affirmed.*