(No. 32237.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES RYAN, Plaintiff in Error.

*Opinion filed March 20, 1952.*

Ralph S. McFarland, of Chicago, (G. A. Buresh, and C. Vernon Thompson, of counsel,) for plaintiff in error.

Ivan A. Elliott, Attorney General, of Springfield, and John S. Boyle, State's Attorney, of Chicago, (John T. Gallagher, Rudolph L. Janega, Arthur F. Manning, William J. McGah, Jr., and Edmund H. Grant, all of of Chicago, of counsel,) for the People.

Mr. Justice Schaefer delivered the opinion of the court:

A judgment of the criminal court of Cook County found the defendant, James Ryan, guilty of contempt of court and sentenced him to the county jail for a term of sixty days. The case is here upon writ of error.

Defendant is the same James Ryan who was involved in *People* v. *Ryan,* 410 Ill. 486. The contempt proceeding

which was before us in that case grew out of his refusal to comply with a *subpoena duces tecum*. The present proceeding stems from the same grand jury investigation and involves his alleged failure to obey a *subpoena ad testificandum*.

On July 17, 1950, Ryan was served with a *subpoena* commanding that he appear forthwith before the grand jury of Cook County to testify concerning a certain complaint made before the grand jury against George S. May. Defendant did not appear before the grand jury in response to the *subpoena,* and, on July 27, 1950, a writ of attachment was issued directing the sheriff to bring the defendant forthwith before the criminal court to answer for his contempt in not attending court as a witness, having been duly served with process. On August 1, defendant was arrested under the writ of attachment and, on the following day, he appeared in court, his bail was fixed at $5000, and a rule was entered upon him to show cause why he should not be held in contempt for failure to appear as a witness.

The verified answer of the defendant to the rule to show cause states that he was served with the *subpoena* on Friday, July 21, 1950, at about 11:00 A.M. at the Tam O'Shanter Country Club located in Niles township (outside the city of Chicago.) It alleges that upon being served he went forthwith to the criminal court building at Twenty-sixth Street and California Avenue in the city of Chicago and arrived there at approximately 12:20 P.M. on Friday, July 21; that upon arriving at the criminal court building he was informed by Ralph S. McFarland, an attorney, that the chief justice of the criminal court had adjourned the grand jury until the following Monday and that the grand jury was not in session; that McFarland advised him that the *subpoena* with which he had been served was a forthwith *subpoena* which did not require him to attend upon any other day, or from day to day thereafter, and that

he relied upon this statement. Defendant's answer further states that he did attend and was interrogated before the grand jury and the court on August 2, 1950. Defendant's answer is corroborated as to the fortuitous meeting with McFarland by attached affidavits of McFarland and one Rezek, both of whom also state that they were present in court on Friday, July 21, 1950, when the grand jury was adjourned about noon until the following Monday. A transcript of the proceedings before the court on August 2, 1950, also made a part of Ryan's answer, shows that the foreman of the grand jury testified that it was not in session on Friday afternoon, July 21, 1950, but was dismissed on that day between 11:15 and 11:45 A.M.

The judgment order, entered August 25, 1950, states that the court considered the information of the foreman of the grand jury, the rule to show cause and the defendant's sworn written answer. The court finds "that said James Ryan in response to said *subpoena* went to the said Criminal Court of Cook County and appeared there at 12:20 P.M. on Friday, July 21, 1950, but failed and neglected without cause or excuse to report to or appear before the said Grand Jury or at the room in the said Criminal Court Building usually occupied by the said Grand Jury or to any court attache assigned to the said Grand Jury or said Grand Jury room at that time and place or at a subsequent meeting of the said Grand Jury in response to the said *subpoena;* and the said neglect, failure and refusal to comply with the said *subpoena* of the Criminal Court was a wilfull disobedience and defiance of the process of this court * * *." A sentence to the county jail for a term of sixty days followed this finding of guilty.

Defendant challenges the judgment on several grounds. In the view we take of the case, only one of them need be discussed. Defendant contends that he is entitled to be discharged because his sworn answer to the rule to show cause must be taken as true, and so taken, it states facts

which purge him of contempt. The rule to show cause charges the defendant with failure, without cause or excuse, to attend as a witness. If true, the conduct charged constitutes a criminal contempt. Our decisions have drawn procedural distinctions between direct and indirect criminal contempts. Direct contempts, involving contemptuous conduct within the personal knowledge of the judge, may be summarily punished without the issuance of a rule to show cause and without the hearing of evidence. (*People* v. *Siegal,* 400 Ill. 208; *People* v. *Andalman,* 346 Ill. 149.) Proceedings to punish indirect contempts, involving conduct beyond the personal knowledge of the judge which can be established only by extrinsic evidence, must be instituted by information, notice, citation or rule to show cause, and the alleged contemnor is entitled to a hearing. (*People* v. *Pomeroy,* 405 Ill. 175; *People* v. *Whitlow,* 357 Ill. 34.) In such cases this court has held that a sworn answer of the alleged contemnor which denies the wrongful acts is conclusive. Extrinsic evidence may not be received to impeach it, and he is entitled to his discharge. (*People* v. *Whitlow,* 357 Ill. 34.) If the answer is false the remedy is by indictment for perjury. (*People* v. *McDonald,* 314 Ill. 548.) An exception exists where the critical issue is the intention with which admitted acts were performed; in such cases, a sworn answer will not purge if the admitted conduct is inconsistent with the alleged intention of the contemnor. *People* v. *Siegal,* 400 Ill. 208; *People* v. *Parker,* 374 Ill. 524; *In re Estate of Kelly,* 365 Ill. 174.

The People rely upon *In re Estate of Kelly,* 365 Ill. 194, and *People* v. *Andalman,* 346 Ill. 149, which extend the category of direct contempts to conduct occurring in a constituent part of the court, even though beyond the physical presence of the trial judge, and hold that a sworn answer is not effective to purge contempts so arising. A grand jury, it is established, is a constituent part of the court and contemptuous conduct before the grand jury con-

stitutes direct contempt. (*People* v. *Sheridan,* 349 Ill. 202; *People* v. *Cochrane,* 307 Ill. 126.) In the *Andalman case* (346 Ill. 149,) the contemptuous conduct consisted of filing papers with the clerk of the superior court contrary to the court's orders, and in the *Kelly case* (365 Ill. 174,) a spurious will was filed with the clerk of the probate court. In the present case, however, the contemptuous conduct did not occur before the grand jury, nor did it occur in a place set apart for the use of a constituent part of the court. Whether or not Ryan is guilty of contempt of court depends upon his conduct and the circumstances which occurred after he was served with the *subpoena* on July 21, 1950, and not upon any occurrences which took place before the grand jury. In our opinion the contempt, if any, in the present case was an indirect contempt.

So viewed, defendant's answer establishes that upon being served with the *subpoena* at 11:00 A.M. he proceeded at once to the criminal court building in Chicago and arrived there at 12:20 P.M. To this point, his conduct shows prompt obedience to the command of the *subpoena.* The People contend, however, and the trial court held, that because he failed to report at the grand jury room or to any court attache assigned to the grand jury or to any subsequent session of the grand jury, he willfully disobeyed and defied the process of the court. We do not so interpret his conduct. It is not disputed that the grand jury had been adjourned by the court until the following week well before the defendant was able to get to the criminal court building. It is established that the defendant was informed of the adjournment. We need not determine the accuracy of the gratuitous advice given to the defendant as to what was required of him by way of compliance with the *subpoena.* So far as defendant was concerned, that advice was not in conflict with the language of the *subpoena.* It commanded him to appear forthwith before the grand jury. It might have directed him to appear from day to day

thereafter before the grand jury until he was excused. It did not do so. Defendant's conduct is consistent with his alleged intention to comply with the *subpoena,* and his answer alleging that conduct purged him of the contempt charged and entitled him to immediate discharge.

Similar situations rarely appear in reported decisions. *People ex rel. Slaight* v. *Potter,* 6 N.Y. State Reporter 753, however, presented facts strikingly like those here involved. There, an order was entered punishing the defendant, a witness, for contempt for not obeying a *subpoena.* Reversing the order of contempt the court said: "The right of a party to *subpoena* a witness, when the *subpoena* is returnable forthwith, is undoubted. Still the witness in such a case is to be considered. He must be allowed time to obey by means of ordinary methods. The witness was *subpoenaed* at Green Point, about 11:30 A.M. of June 17, 1886, to appear at the court house of Brooklyn forthwith. It was a journey of about an hour and a half. The witness promptly obeyed and when he arrived at the court house the court had adjourned. It seems that the judge remained in the court room after the adjournment. The witness, when he was informed that the court had adjourned, returned to his home. Some hour or more thereafter the plaintiff's attorney caused the relator to be called by the calendar clerk. The witness failed to answer because the court had adjourned, at least so far as the trial of issue was concerned. The witness was not bound to wait after that time."

The People's motion to correct the record, which was taken with the case, does not concern any portion of the record involved in our consideration of the case. It does not, therefore, require formal disposition.

The judgment of the criminal court of Cook County is reversed.

*Judgment reversed.*