(Nos. 39526, 39710 cons.—

THE PEOPLE OF THE STATE OF ILLINOIS, Respondent-Appellant, *vs.* DAVID MASLOWSKY *et al.,* Petitioners-Appellees.

DAVID MASLOWSKY *et al.,* Petitioners-Appellees, *vs.* THE PEOPLE OF THE STATE OF ILLINOIS.—(JOHN E. CASSIDY, JR., *et al.,* Additional Respondents-Appellants.)

*Opinion filed March 24, 1966.—Rehearing denied May 18, 1966.*

UNDERWOOD and SCHAEFER, JJ., dissenting.

RAYMOND L. TERRELL, State's Attorney, of Springfield, (LOURIN A. WOLLAN, Assistant State's Attorney, of counsel,) for the People, appellant.

OWEN RALL, of Chicago, (PETERSON, LOWRY, RALL, BARBER & ROSS, of counsel,) for appellant members of legislative commission.

ALBERT E. JENNER, JR., THOMAS P. SULLIVAN, ROBERT E. PFAFF, and HUGH M. KING, all of Chicago, and J. WALDO ACKERMAN, of Springfield, (RAYMOND, MAYER, JENNER & BLOCK, of counsel,) for appellees.

SIDLEY, AUSTIN, BURGESS & SMITH, of Chicago, (DOUGLAS F. SMITH, D. ROBERT THOMAS, JAMES E. S. BAKER, and RICHARD G. CLEMENS, of counsel,) for the Judicial Advisory Counsel, *amicus curiae*.

Mr. JUSTICE HOUSE delivered the opinion of the court:

This litigation is an outgrowth of the much publicized tape recordings procured by unknown persons secretly "bugging" a hotel room with electronic eavesdropping devices and tapping a telephone in the room.

Six persons were served with subpoenas to appear before a Sangamon County grand jury. They filed a petition to suppress certain tape recordings "and all transcripts, reproductions, or excerpts derived therefrom" for use as evidence before any grand jury or in any civil or criminal trial or in any administrative or legislative proceeding or inquiry; to restrain the State's Attorney of Sangamon County from publishing or exhibiting the tapes or excerpts; to compel the State's Attorney to deliver to the circuit clerk the tapes and excerpts for impoundment; and to quash *subpoenas duces tecum* directing them to appear before the grand jury and produce certain documents.

On July 14, 1965, the trial court entered an order quash-

ing the subpoenas, suppressing the tapes and any transcripts or excerpts for use as evidence before the grand jury "or in any administrative or legislative inquiry or proceedings, or for any other use," enjoining the State's Attorney from using the impounded materials or any information obtained from them and impounding the tape recordings. A verbal motion of the State's Attorney to stay the injunction and impoundment of the tapes was denied. He then presented and asked leave to file a written motion to dismiss and an answer to the petition. Leave was denied. On July 16, the clerk reported compliance with the order by the State's Attorney and the impoundment of the materials. Notice of appeal from the order of July 14 was filed July 27 and the cause was docketed in this court as No. 39526.

The second phase of the litigation involves a six-member commission of the House of Representatives of the Illinois General Assembly who are made additional respondents. Members of the commission were appointed pursuant to House Bill 2269, which created the commission for the purpose of investigating the information contained in and arising out of the tape recordings insofar as they might reflect upon or involve civil officers of the State.

On August 5, 1965, six copies of the order of July 14 were delivered to John E. Cassidy, Jr., chairman of the commission, for distribution to the members. The commission nevertheless caused a *subpoena duces tecum* to be served upon the circuit clerk requiring him to produce the impounded tape recordings and documents. Whereupon the original petitioners filed a petition to quash the *subpoena duces tecum*, and the commission moved to dismiss the petition and expunge the order of July 14 insofar as it restrained the powers of the commission. On August 30 the trial court entered an order denying the motion to dismiss, quashed the commission's subpoena, again suppressed the tape recordings and excerpts and enjoined specifically the additional respondents from using or attempting to use them.

The order contained a finding that there is no just reason to delay enforcement of or appeal from the order.

We denied a motion for leave to file an original petition for writ of *mandamus* to expunge the orders of July 14 and August 30. The commission then filed notice of appeal to this court from the August 30 order and the appeal was docketed as No. 39710.

While the first appeal arose out of a grand jury proceeding and the second out of legislative action, the two are so entwined and the overtones so intermingled that they should be viewed together. For example, aside from the fact that the same petitioners and same tapes are involved in both actions, the order of July 14, 1965, is broad and encompasses a prohibition of use of the tapes not only before the grand jury but also in any "legislative inquiry or proceedings." Consequently, although the causes were argued separately, they have been consolidated for opinion.

We observe parenthetically that after the second appeal the commission conducted a hearing and the court entered a rule to show cause why the additional respondents should not be held in contempt. An order finding the chairman and one member of the commission in contempt was entered, and the question of punishment continued generally pending this appeal. That order is not an issue here.

Three of the petitioners (Maslowsky, Gottlieb and Kaplan) leased the hotel room in April, May and June, 1965, during the 1965 session of the 74th General Assembly. The tapes allegedly are recordings of their conversations in the hotel room over a period of time. They and the other petitioners are members and officials of the Chicago Currency Exchange Association, Inc. Through anonymous letters, Jack Mabley, a columnist for the *Chicago's American,* a Chicago metropolitan newspaper, was given typed excerpts of tape recordings and "tipped off" to look into certain lockers in a Chicago Greyhound bus depot by means of keys en-

closed with the excerpts. He found the 15 tape recordings here involved and gave them and the excerpts to the State's Attorney of Sangamon County. The petition alleges that both Mabley and the State's Attorney played the tapes to persons who were familiar with the voices of the three petitioners and most of the voices on the tapes were identified as those of the three petitioners.

It is the theory of petitioners that the recordings were obtained surreptitiously by means of electronic devices and the placing of a "tap" on their hotel telephone without their knowledge or consent in violation of the eavesdropping article of the Criminal Code of 1961, (Ill. Rev. Stat. 1965, chap. 38, pars. 14—1 to 14—7,) and in violation of their rights under the fourth, fifth, ninth, and fourteenth amendments of the Federal constitution and sections 2, 6, and 10 of article II of the Illinois constitution.

The People's theory is that petitioners lack standing to maintain this action and that "the fruit of the poisoned tree" doctrine is not applicable on either statutory or constitutional grounds unless some showing is made that some governmental agent participated in the obtaining of the recordings.

On the question of standing it is argued that petitioners failed to bring themselves within the category of persons who may claim a violation of their constitutional rights, and the People cite the following cases which they say support their argument: *Goldstein* v. *United States,* 316 U.S. 114, 86 L. Ed. 1312, which held that persons who were not parties to any conversations intercepted by means of illegal wiretapping could not complain, and *Jones* v. *United States,* 362 U.S. 257, 4 L. Ed. 2d 697. Their quotation from the *Jones* case was misleading. The dilemma of a person seeking suppression of evidence, particularly where possession of the seized property in itself establishes proof sufficient to convict was recognized, and it was pointed out that enforcement would not be hampered by recognizing that any person

legitimately on the premises searched may challenge legality of the search when its fruits are proposed to be used against him.

We think there is a sufficient showing of identity of the three petitioners as three of the persons whose conversations were recorded. True, they did not (and could not since they never heard a play-back of the recordings) swear of their own knowledge that the voices were their own. The State's Attorney must have had reasonable grounds for believing that the voices of the three were on the tapes since he requested their presence to verify that fact. In fact, paragraph 5 of the original petition alleged that the State's Attorney "had procured persons allegedly familiar with petitioners' voices to listen to the recordings and that said persons had identified the voices of Maslowsky, Gottlieb, and Kaplan as those recorded on said tape recordings." This paragraph was sworn to by petitioners' counsel since the statement had been made to him. During a colloquy between counsel and the court the State's Attorney said, "I would think that it is correct that [for] the purpose of this motion the court would accept as true all matters of fact which are properly stated in the petition excluding conclusions, of course." Thereupon counsel for petitioners elected to submit the matter on the sworn petition without putting on proof. This made a *prima facie* case of identity.

The other facet of the question of standing is whether it was established that the recordings were illegally obtained. The petition alleged that the three petitioners had rented and occupied the room as registered guests, that no consent was ever given by them to the recording of their voices or telephone conversations, that three of the names often referred to in the tapes were contractions of the three petitioners given names, and that on information and belief the tapes referred to in the newspaper were the same tapes referred to by the State's Attorney which he requested that they listen to in his office. These allegations, coupled with

the admitted identity of the petitioners' voices on the tapes, definitely shows standing of the petitioners to be heard on their petition.

Our holding on the question of standing in connection with the original petition is equally applicable to the additional respondents. Both petitions were heard by the same judge. He had previously satisfied himself as to petitioners' identity and that the information had been obtained by "bugging" and wiretapping. The same persons were petitioners in the first petition and both petitions were filed in cause No. 1362-65. Judges do not operate in a vacuum and where, as here, the trial judge had previously found standing of the petitioners, it is not necessary that it be re-established in the second petition even though it designates different respondents.

Both orders held that the recordings were made in violation of the eavesdropping article, (Ill. Rev. Stat. 1963, chap. 38, pars. 14—1 *et seq.,*) and were based upon that premise. Section 14—1(b) defines an eavesdropper as "any person, including law enforcement officers, who operates or participates in the operation of any eavesdropping device contrary to the provisions of this Article." The elements of the offense are set out in section 14—2: "A person commits eavesdropping when he: (a) Uses an eavesdropping device to hear or record all or any part of any oral conversation without the consent of any party thereto; or (b) Uses or divulges any information which he knows or reasonably should know was obtained through the illegal use of an eavesdropping device." As to admissibility, section 14—5 provides: "Any evidence obtained in violation of this Article is not admissible in any civil or criminal trial, or any administrative or legislative inquiry or proceeding, nor in any grand jury proceedings."

The People, unlike the commission, do not attack the eavesdropping statute nor claim its repeal in whole or in part. Rather, they argue that the exclusionary provision does

not apply to illegally obtained evidence where a governmental agency had neither knowledge of nor had initiated, authorized or consented to the procurement of the evidence. The argument is predicated upon interpretations of search and seizure and self-incrimination constitutional provisions. A leading case is *Burdeau* v. *McDowell,* 256 U.S. 465, 65 L. Ed. 1048, where illegally stolen papers came into the hands of the government through someone other than a governmental agent. The Supreme Court held that the protection of the fourth amendment against unlawful searches and seizures extended against the use of incriminatory papers only if the government participated in their procurement. (See *People* v. *Touhy,* 361 Ill. 332.) The short answer is that by the enactment of the eavesdropping statute the legislature expanded the exclusionary rule beyond the scope of the rule laid down in the *Burdeau* case. While constitutional doctrine might only require the exclusion of evidence unlawfully obtained by police officers, the legislature has exercised its prerogative and required the exclusion of evidence obtained by any person in violation of the statute.

In the alternative the People contend that use of evidence derived from the tape recordings, even though the recordings were obtained illegally by persons other than the State, is not prohibited by section 14—5. It is argued that the "fruit of the poisoned tree" doctrine developed in the second *Nardone* case, (*Nardone* v. *United States,* 308 U.S. 338, 84 L. Ed. 307,) with respect to information obtained by government wire tapping, was not adopted by section 14—5 either expressly or by implication, and that derivative evidence should be obtainable through the use of subpoenas.

The eavesdropping statute is broad, and encompasses within the term "eavesdropper" not only a person who participates in the operation of an eavesdropping device but one who uses or divulges information so obtained. When all of the provisions of the eavesdropping statute are considered,

particularly sections 14—2(b) and 14—5, it is apparent that the "fruit of the poisoned tree" doctrine has been expressly adopted, (See Cleary, Handbook of Illinois Evidence, 2d ed. (1963) sec. 10.10, p. 164,) and we have no discretion to interpret it otherwise. We are of the opinion that the order of July 14, 1965, was in accordance with the statute and cannot be reversed on the grounds asserted by the People.

We now turn to the contentions made by the commission and to those phases of the case peculiar to that body. It asserts that the eavesdropping statute was superseded by House Bill 2269, which created the commission, that the statute's partial repeal for the purposes of this legislative inquiry is not an unconstitutional invasion of petitioners' rights, since they had no constitutional right to the suppression of evidence of their anonymously recorded conspiratorial conversations, and that the trial court's order violated the separation-of-power article of the State constitution.

While the court's jurisdiction over members of the commission is not attacked until the sixth and final point of the commission's brief, it should be disposed of before we proceed to the substantive questions. It is contended that the entry of the August 30 order without serving the commission members with lawful process deprived them of notice, and the argument is couched in constitutional language as a deprivation of liberty without due process. It is true there was no formal service, although there was full knowledge by the commission members of the order of July 14. Prior to the issuance of the commission's subpoena to the clerk, a letter enclosing six copies of the order was mailed by petitioners' counsel to the chairman for distribution to its members stating that it appeared that the commission intended to attempt to use the impounded tapes. The chairman acknowledged receipt and requested a copy of the judge's memorandum opinion so that he could reproduce copies for the members. The second petition followed issu-

ance of the subpoena and a copy, together with a notice of its presentation, was mailed to each member of the commission, the State's Attorney, and the circuit clerk five days before the hearing, which was set for August 25, 1965.

It is argued that the order of July 14, 1965, ante-dated H.B. 2269, approved on July 21, 1965, (although it had been passed by both houses of the General Assembly prior to the date of the order,) and was void since it in effect enjoined the operation of a statute which had not yet been enacted. The House Bill was, of course, not in effect until it was approved; but even if it were, it was within the jurisdiction of the trial court, right or wrong, to enter an order in the language of the eavesdropping statute, which had not been expressly amended or repealed. It was not necessary that members of the commission have been parties to the cause, when the first order was entered, to be bound thereby so long as they had actual knowledge of the injunction and its contents. "[T]he court had jurisdiction of the persons and the subject matter of the suit and issued the injunction, which was not only binding upon the persons who were actual parties defendant to the bill, but was also binding upon all persons who had actual notice of the contents of the writ, * * *." (*O'Brien* v. *People ex rel. Kellogg Switchboard and Supply Co.* 216 Ill. 354, 367.) After H.B. 2269 became operative and the commission had been appointed, the restraining order of July 14 applied to the members of the commission. Once the evidence was suppressed it remained suppressed unless and until the order suppressing it was set aside or modified on review. Courts have the full power and authority to enforce their official mandates in a summary manner. (*O'Brien* v. *People,* 216 Ill. 354.) Here, the court had jurisdiction at the time of the entry of its order of July 14. As we have pointed out, the commission had actual knowledge of the order and its contents, and it became binding on its members.

The order of August 30 was identical in effect, if not

in content, with that of July 14. The trial court entered it for purposes of clarification, since the commission, by issuing its *subpoena duces tecum* to the circuit clerk, an officer of the court, to produce impounded materials, implied that it was not thereby bound. The court's first order was entered, however, without reference to the controverted effect of H.B. 2269. It was proper that the second petition be docketed in the same cause since the subject matter was the prior order and directed the court's attention to the intended violation of that order. The confusion on the question of jurisdiction over the person apparently arises from an effort to fit this proceeding into the injunctive procedure of the Civil Practice Act, when actually it partakes more of the flavor of a motion by a defendant to suppress illegally seized evidence under the Criminal Code. (Ill. Rev. Stat. 1965, chap. 38, par. 114—12.) The action is a hybrid and stems from the inherent power of a court to enforce its mandates. The order of August 30 supplemented and clarified the order of July 14 by specifically spelling out its application to the commission members and quashing the commissions' *subpoena duces tecum* issued in violation of the terms of the first order. Under these peculiar, extraordinary and unprecedented circumstances, we are of the opinion that the commission members, who were bound by the July 14 order until it might be set aside, were subject to the jurisdiction of the court without formal service of process.

H.B. 2269 provided for creation of a commission to investigate the specific tapes and transcripts here involved, with the power and duty "To investigate the background, allegations, and charges arising out of the information contained in tape recordings and transcripts thereof * * * insofar as they reflect upon or involve civil officers of the State whether they be members of the General Assembly or not * * *." The commission was directed to make a report to the Governor and Speaker of the House at least once each month and to submit recommendations.

Aside from the constitutional aspects, the effect, if any, of the enactment of H.B. 2269 on the eavesdropping statute must be determined. The commission argues that H.B. 2269 repealed or superseded the eavesdropping statute to the extent necessary to permit carrying out its terms and that where the provisions are incompatible, a later adopted special statute takes precedence over an earlier general one.

Repeal by implication is not favored and, if possible, statutes will be so construed that one does not operate as a repeal of the other by implication even though there are inconsistencies. (*People ex rel. Myers* v. *Pennsylvania Railroad Co.* 19 Ill.2d 122; *Village of Glencoe* v. *Hurford*, 317 Ill. 203.) But where the statutes are irreconcilably repugnant, the latter abrogates the former to the extent that they are inconsistent and irreconcilable since it cannot be supposed that the General Assembly intends to enact and enforce laws which are contradictions. (*Rosehill Cemetery Co.* v. *Lueder,* 406 Ill. 458; *Chicago Park District* v. *Harris,* 402 Ill. 214; I.L.P., Statutes, sec. 84.) This special statute, though enacted by the same body, is totally irreconcilable with section 14—5 of the eavesdropping statute which declares inadmissible any evidence obtained in violation of it and prohibits its use in any "legislative inquiry or proceeding."

Petitioners strenuously urge that refusal by the legislature to adopt amendments authorizing limited court-supervised wiretapping for a two-year trial period and passage of House Bill 452 which increased the maximum penalty and permitted portions of illegal recordings to be used as evidence to convict eavesdroppers, reflected an acute awareness by the legislature of the evils and dangers of eavesdropping and wiretapping. It is said that the treatment of the amendments, the passage of H.B. 452 and the fact that H.B. 2269 contained no reference to either the eavesdropping statute or the act of 1927 relating to telegraph and telephone messages, (Ill. Rev. Stat. 1965, chap. 134, par.

15a,) preclude an interpretation that it was the intent of the legislature to amend by implication. H.B. 2269 was unanimously enacted in the face of the generally accepted fact that the tapes were surreptitiously obtained. An inquiry was demanded on the very tapes here involved.

We think the language of H.B. 2269 expresses a clear intent that a legislative investigation be conducted for the purpose of possible impeachment or expulsion of members of the General Assembly and to the extent the eavesdropping statute prohibited "legislative inquiry or proceeding" it was repealed by implication. In fact, the intent was so plain that recourse to usual precepts to gather intent is totally unnecessary. The intent with respect to use of the information for purposes of indictment and prosecution under the Criminal Code is not so apparent. Reference to co-operation with the State's Attorney is susceptible of referring to evidence from other sources developed by the commission while investigating the integrity of civil officials. To hold that H.B. 2269 permitted use of the tapes and transcripts in the courts would effectively emasculate the eavesdropping statute and accomplish its repeal *in toto,* and we see no such intention on the part of the General Assembly.

But petitioners assert that when thus construed H.B. 2269 is unconstitutional legislation and denies their constitutional rights to equal protection of the law and due process. It is said that members of the commission would be conferred a special or exclusive privilege or immunity in violation of section 22 of article IV of the constitution. First, it is alleged that there would be an exemption of this commission to the exclusion of any other legislative committee or the General Assembly itself and, second, that it would create an arbitrary and unconstitutional classification among victims of eavesdropping.

The purpose of H.B. 2269 is a public one. It provides for a legislative inquiry insofar as the materials will reflect upon or involve civil officers of the State, whether they be

members of the General Assembly or not. Thus, the purpose is not just for the benefit of members of the commission, but for the whole General Assembly through its agency, the commission. The petitioners have not been indicted, nor in fact, even accused of a crime. Under our views hereinbefore expressed, the tapes and excerpts cannot be used as evidence before a grand jury or in a criminal proceeding against them because of the unaffected provisions of the eavesdropping statute remaining in full force after the adoption of H.B. 2269. The petitioners have been and may well be further embarrassed by disclosures on the tapes (as may others named therein) but this legislative investigation gives them no constitutional grounds for objection.

We see no valid separation-of-powers problem in the entry of either of the orders under review. The trial court entered the July 14 order based on the eavesdropping statute. The order was for the purpose of enforcing a valid pronouncement of the legislature, not in derogation of its prohibition against the use of recording devices. The broad terms of the order were in the language of the statute. The order of August 30 was practically identical with the first without giving effect to H.B. 2269. This did not mean that restraining use of the materials by the commission constituted interference with the legislative branch of the State government but was, at most, an interpretation that H.B. 2269 did not supersede the eavesdropping statute or repeal it in whole or in part by implication. Interpretation and enforcement of statutes is a function of the courts and does not constitute interference with legislative prerogatives. (*Cf. Arlington Heights National Bank* v. *Village of Arlington Heights,* 33 Ill.2d 557.) The question of the effect of H.B. 2269 has given considerable concern to all, including able counsel in these consolidated cases. The fact that the trial judge viewed it differently than we do does not mean that there was a violation of the separation-of-powers article

when he failed, or refused, to give the effect to H.B. 2269 that was attributed to it by the commission.

We are of the opinion that the first order was proper at the time it was entered, but became subject to modification when the General Assembly spoke through H.B. 2269; and that the second order went too far in restraining the legislative inquiry demanded by H.B. 2269.

The orders of the circuit court of Sangamon County of July 14, 1965, and August 30, 1965, are affirmed, except as to the prohibition against use of the tapes, transcripts and excerpts by the commission in its inquiry; and insofar as the limited use of the tapes and materials by the commission was prohibited, both orders are reversed and the consolidated cause remanded with directions to modify same in accordance with the views herein expressed.

*Affirmed in part and reversed in part, and remanded with directions.*

Mr. JUSTICE UNDERWOOD, dissenting:

I would reverse the trial court *in toto* since I believe the petitioners have failed to make a sufficient showing of violation of the eavesdropping statute to authorize suppression of the tape recordings. This view stems in large part from my disagreement with the construction of the eavesdropping act adopted by a majority of this court in *People* v. *Kurth,* No. 38264, decided this term. That opinion held recordings of conversation inadmissible against any party thereto who had not consented to such recording. For the reasons set forth in my dissent filed in that case, I believe such recordings admissible against all parties to the conversation if consented to by any.

Based upon this premise and upon the further premise that "The burden is, of course, on the accused [petitioner seeking suppression] in the first instance to prove to the trial court's satisfaction that wire-tapping [eavesdropping]

was unlawfully employed," (*Nardone* v. *United States,* 308 U.S. 338, 341, 84 L. Ed. 307, 312,) the petitions filed are inadequate to establish a violation of the statute upon which suppression of the tape recordings is predicated. It appears from the trial court proceedings that there are a number of conversations recorded on the tapes and that such conversations involve voices in addition to those assumed to be petitioners. Since I believe consent of any of these parties to recording of the conversations in which they participated would render the recordings of such conversations admissible against all participants therein, it follows that an affirmative showing of the total absence of such consent is necessary before violation of the statute can be said to be established and suppression authorized. At no point in the petitions or trial court proceedings was there any assertion by petitioners that *no* party to any of the conversations had consented to the recording thereof. In the absence of such affirmative allegation or proof, a violation of the eavesdropping statute is not, in my judgment, established, and the prohibition of section 14—5 against use of the recordings does not come into effect. Nor can petitioners claim they are unable to negate consent by other parties because they have "never heard a play-back of the recordings". Petitioners were invited to come to the State's Attorney's office and listen to a play-back. They refused to go, and should not now be permitted to use their voluntary refusal to listen as an excuse for their failure to allege or establish a lack of consent by all parties to the conversations. Obviously, petitioners are the individuals best able to identify the persons whose voices are recorded and to ascertain whether any of such persons consented to such recording.

The petitions are, in my judgment, insufficient for an additional reason—there is no positive, affirmative allegation that petitioner's voices are among those upon the tapes, and thus no standing is shown entitling petitioners to complain of use of the recordings. It is usually required of one

who seeks to suppress evidence he claims to have been illegally secured that he first establish that it is *his* personal rights which were violated in securing the evidence and that *his* rights would be violated by its use. The allegations of the petition here are only that certain newspaper stories state the voices to be those of petitioners; that petitioners have been informed that voices on the tapes have been identified by third persons as those of petitioners; and that *"if authentic,* and *if recording their voices"* such recordings were unlawfully obtained. Such equivocation scarcely merits consideration as meeting ordinary requirements for establishing standing. Waiver of the usual showing in these cases is justified by the majority on several grounds, among which is the inability of petitioners to make such allegation since they have not heard the tapes played back. This excuse was, I believe, adequately answered earlier by the fact that they were invited to listen to the tapes and refused.

An additional ground upon which the finding of standing rests in the majority opinion is "the admitted identity of the petitioners' voices on the tapes." The conclusion that identity was admitted by the State's Attorney arises from his oral statement during a colloquy at the hearing on the motion to dismiss the petition. The State's Attorney said: "I would think that it is correct that [for] the purpose of this motion the court would accept as true all matters of fact which are properly stated in the petition excluding conclusions, of course". This is nothing more nor less than a reiteration by counsel of the usual rule of procedure—that a motion to dismiss admits the well-pleaded factual content of the challenged document. The conclusion that this constituted an admission of identity of voices is sustainable only if the petition contained a factual allegation that petitioners' voices are on the tape, and it is precisely this factual allegation which is missing not only from the petition but from the entire proceedings. It is alleged that newspaper stories say some of the voices have been identified as peti-

tioners'; the State's Attorney admits newspapers have said this, but, clearly, he cannot be said to admit the truth of the newspaper statement for its truth is not alleged. I am not aware that we have ever held a newspaper's statement of a conclusion to be the equivalent of a positive factual allegation by a pleader. It is also alleged that the State's Attorney had told petitioners' counsel that third parties had identified voices on the tapes as those of petitioners. Some dispute exists as to the accuracy of this allegation, but, in any event, even its admission establishes only that third parties identified the voices as petitioners'—not that they are petitioners' voices. Petitioners never allege the identification to have been correct, and the State's Attorney scarcely can be held to have admitted that which petitioners have consistently and carefully avoided claiming—that any of the voices upon the tapes are, in fact, theirs. In short, since there has never been an unequivocal statement by petitioners that their voices appear on the tapes, I cannot agree that the identity of the voices has been admitted. That no such admission was ever intended or made is, I believe, further demonstrated by the State's argument supporting the motion to dismiss which emphasizes the total absence of allegations or proof that petitioners' voices appear on the tapes, and the attempt, following denial of the motion to dismiss, to file an answer denying the allegations of the petition to suppress, the legal sufficiency of which had been sustained (erroneously, in my opinion) by the trial judge.

Since the "standing" and consent questions are identical in both cases, I would hold that, absent an affirmative showing that petitioners' voices are among those recorded and that no party to any of the conversations had consented to the recordings, the State's motion to dismiss the petition to suppress and impound the tapes in case No. 39526 and the commission's motion to dismiss the petition to quash the *subpoena duces tecum* in No. 39710 should have been al-

lowed. Consequently, I would reverse both the July 14 and August 30 orders of the trial court.

Mr. JUSTICE SCHAEFER joins in this dissent.