*In re* GRAND JURY INVESTIGATION OF DONALD SWAN.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* DONALD SWAN, Respondent-Appellant.)

Second District   No. 80-146

Opinion filed January 20, 1981.

George Patrick Lynch, of Chicago, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Robert L. Thompson, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE NASH delivered the opinion of the court:

Following a bench trial respondent, Donald Swan, was found guilty of contempt for his refusal to obey an order of the trial court that he comply with a grand jury subpoena directing him to provide that body with a set of impressions of his fingertips. A fine of $100 was imposed to be assessed against him for each day he failed to obey the order. Respondent appeals, contending that the trial court erred in (1) applying the doctrine of purgation by oath; (2) failing to quash the subpoena; (3) the procedures followed at his contempt hearing which denied him due process of law; (4) that he was not proven guilty beyond a reasonable doubt; (5) refusing to permit him to make an offer of proof; (6) denying his motion to disqualify the State's Attorney of Du Page County from prosecuting the case; and (7) holding his trial in secret.

The events which led to this appeal arose from an investigation by the grand jury of Du Page County into alleged improprieties committed by respondent in the performance of his duties as supervisor of York Township and as a member of the county board of Du Page County, and also in relation to a listening device found on his wife's telephone. He was initially served with a subpoena to appear before the grand jury on September 25, 1979; he appeared, but after waiting for several hours was not called to testify. On October 17, 1979, respondent was again served with a subpoena for his appearance on the next day and which directed him to provide the grand jury with his fingerprints and handwriting samples. Respondent's failure to appear at the designated time was excused because his presence was required in another pending lawsuit and he could not comply with the subpoena on such short notice. Swan did, however, appear before the grand jury on October 25, 1979, and gave handwriting samples and several sets of fingerprints.

The grand jury subsequently determined that it would also need a set of Swan's fingertip prints and on December 27, 1979, he was served with a subpoena directing him to appear on January 17, 1980, for that purpose. Swan did not appear on the designated date and on January 29 moved to quash the subpoena. The trial court denied his motion and ordered Swan to appear before the grand jury on February 7, 1980, and provide it with a set of impressions of his fingertips. The court also prohibited the State from seeking additional subpoenas, except on motion with notice to defendant with an opportunity to be heard. While Swan did appear before the grand jury on February 7, he refused to permit impressions of his fingertips to be taken.

On February 13, 1980, the State filed a petition for rule to show cause which alleged, *inter alia*, that Swan wilfully refused to comply with the order of January 29, 1980. In his answer to the petition, which also stood as his answer to the rule when it issued, Swan admitted the court had ordered him to give fingertip impressions to the grand jury but "deni[ed] that he 'wilfully refused' to provide fingertip impressions but did so strictly because of violations of fundamental * * * constitutional * * * rights." His attorney also stated to the court during the hearing of the petition that respondent had failed to comply with the court's order.

The State offered no evidence in support of its petition, arguing that none need be adduced since Swan's admission that he did not comply with the court's order made a *prima facie* case for contempt. Swan then testified that several subpoenas had been served upon him; that he lost customers in his insurance business because they had been called to testify before the grand jury; that private communications between him and his wife had been used by law enforcement officers; and that he had earlier provided the grand jury with impressions of his fingertips.

The trial court viewed this testimony as immaterial to the issue before it, that being whether Swan's failure to comply with its order of January 29, 1980, was wilful, and declined to hear further testimony. The judge concluded Swan was seeking again to quash the subpoena by introducing evidence which the court had earlier considered to be insufficient to quash it. As Swan had produced no evidence tending to show that his refusal to obey the order compelling him to comply with the subpoena was not wilful, or had not otherwise shown that the order was void, the court found him guilty of contempt and imposed the fine.

I

Swan first contends that the trial court erred in applying the doctrine of purgation by oath. He bases this claim of error upon the trial court's reliance on *People v. Ryan* (1952), 412 Ill. 54, 104 N.E.2d 821, for the proposition that a denial under oath of the allegations of a petition for a rule to show cause should "end the proceedings because from that particular point on it would be a prosecution for perjury or it would be nothing." He notes that purgation by oath was abolished in *People v. Gholson* (1952), 412 Ill. 294, 106 N.E.2d 333, and argues that by adhering to this doctrine, the trial court denied him due process as the State was relieved of its burden of proving him guilty beyond a reasonable doubt if it could present a *prima facie* case simply by filing a petition for rule to show cause. The State, however, correctly points out that even if the trial court believed purgation by oath to be a viable doctrine, it was not applied in this case. It did not depend for evidence on a denial of the State's petition by respondent, but based its findings upon admissions by respondent and his counsel that he failed to obey the court's order to give impressions of his fingertips.

II

We next consider respondent's contention that the trial court erred in refusing to quash the subpoena.

In his motion filed on January 29, 1980, Swan challenged the subpoena on the grounds it was issued for purposes of harassment, stating he had previously supplied the grand jury with fingertip prints; that it was issued in order to prejudice him in the eyes of the grand jury; that he had lost customers in his insurance business as they too had been called to testify; that the law enforcement officials were inept at analyzing their own information; and that the grand jury was using information acquired by law enforcement officials in violation of respondent's marital privilege. The trial court had declined to hold an evidentiary hearing of the motion, reasoning that, as a matter of law, the allegations did not present grounds to quash the subpoena and that it would have a "chilling effect"

on the grand jury process to call witnesses who had testified in those proceedings and might have to testify again.

■■ ■ We agree with respondent's argument that a court has a duty to prevent perversion of the grand jury process (*People v. Sears* (1971), 49 Ill. 2d 14, 273 N.E.2d 380), and that the use of information acquired in violation of a privilege (*cf. Black v. United States* (1966), 385 U.S. 26, 17 L. Ed. 2d 26, 87 S. Ct. 190 (attorney-client privilege); *In re January 1976 Grand Jury* (7th Cir. 1976), 534 F.2d 719 (attorney-client privilege)), or otherwise illegally acquired (*People v. Maslowsky* (1966), 34 Ill. 2d 456, 216 N.E.2d 669 (eavesdropping)), should be suppressed. It is, however, only under the most extraordinary circumstances, where necessary to prevent a deprivation of due process or a miscarriage of justice, that a court should exercise its supervisory power over a grand jury investigation. (See *People v. Sears.*) The grand jury's request for fingertip prints in the present case cannot be considered as harassment; the considerations of due process which govern grand jury proceedings do not give rise to a right to refuse to comply with a subpoena simply because the witness believes the grand jury already has the information requested. While repeated requests for information already provided could amount to such a disregard for due process that a court would exercise its supervisory powers, the facts of this case do not warrant such judicial intervention. The trial court's order prohibiting further subpoenas directed to defendant except on motion of the State sufficiently protected him from abuse of the grand jury process.

■■ ■ As to Swan's claim of violation of his marital privilege we need only note that considerations of a marital privilege are not material to a request for fingertip prints of the spouse subpoenaed. Similarly, the trial court properly declined to hear testimony relating to Swan's other allegations on the basis that it would have a "chilling effect" on the grand jury's investigation. While a court does have supervisory power over a grand jury, it has historically been an independent body (*People v. Sears*), and it could not fulfill its function and purpose if during its deliberations a court called witnesses who had testified in its proceedings for inquiries of the nature of those raised by respondent.

## III and IV

We next consider whether the procedure followed in the contempt trial denied Swan due process of law.

In arguing that he was deprived of due process Swan asserts that as his trial was for indirect contempt, it gave rise to due process requirements of written notice of charges, an opportunity to deny and defend them, the right to examine adverse witnesses, the right to counsel and the right to be found guilty only upon proof of the charges beyond a

reasonable doubt. (*People v. Tomashevsky* (1971), 48 Ill. 2d 559, 273 N.E.2d 398; *People v. Skar* (1964), 30 Ill. 2d 491, 198 N.E.2d 101; *People v. Spain* (1923), 307 Ill. 283, 138 N.E. 614.) As he was found guilty of contempt, although the State produced no evidence in support of its petition, Swan asserts he was denied his right to confront the witnesses against him and the requirement that he be proved guilty beyond a reasonable doubt. As a corollary to the latter claim, Swan argues that the court, in effect, required him to carry the burden of proof of his innocence when it ruled that a *prima facie* case for contempt existed in light of his answer to the petition in which he admitted his refusal to obey the court's order. He relies upon *People v. Skar* to support his contention that he cannot be convicted of indirect contempt unless the State produces evidence to support the charge.

We note initially that *Skar* concerned a conviction for contempt supported only by the State's petition and the absence of a denial of the charges by defendant, which the State there contended could be considered as an admission of guilt. In the present case, however, Swan has admitted that he did not comply with the court's order and *Skar* is clearly inapposite. In considering the merits of Swan's argument, it is useful to note the distinctions which are made between the various types of contempt.

In addition to being characterized as either civil or criminal, contempt is also classified as direct or indirect. Direct contempt arises from acts or omissions committed in the presence of the court or any constituent part of it of which the judge has personal knowledge. (*People v. Patrick* (1980), 83 Ill. App. 3d 951, 404 N.E.2d 1042.) Such conduct can be punished summarily, without prior notice, written charges, plea, issue, or trial. (*People v. Tomashevsky* (1971), 48 Ill. 2d 559, 273 N.E.2d 398.) Indirect contempt arises where the contemptuous conduct is committed outside the presence of the court (*People v. Patrick*) and, therefore, extrinsic evidence is required. (*People v. Tomashevsky*; *People v. Skar*.) If, however, the contemnor admits his contempt in open court, indirect contempt may be punished summarily as direct contempt. (*People v. Patrick*; *People v. Sears* (1971), 49 Ill. 2d 14, 273 N.E.2d 380; *People v. Berof* (1937), 367 Ill. 454, 11 N.E.2d 936.) In either case, only a wilful violation of a court order can constitute contempt. (*People v. Patrick*.) The question in the present case then becomes whether Swan's admission that he had refused to obey the court's order can be considered as a wilful violation of it.

■■ In his answer to the State's petition to a rule to show cause, respondent denied that he wilfully refused to obey the court order, but that he did so in reliance upon his constitutional rights. His claim to a constitutional right to disobey the court's order was founded upon a series of "affirmative

defenses" in his answer which consisted of essentially the same allegations he had made in support of his motion to quash the subpoena which the trial court had denied. Swan did not seek review of that order, nor did he assert that it was void for lack of jurisdiction (see *Faris v. Faris* (1966), 35 Ill. 2d 305, 220 N.E.2d 210). Since the trial court had determined that Swan was not authorized to disobey the court's order on those grounds, his continued refusal to do so must be considered as wilful and is punishable summarily as direct contempt. By committing a direct contempt, Swan was not entitled to the protections of due process (*People v. Collins* (1978), 57 Ill. App. 3d 934, 373 N.E.2d 750), and his arguments he was required to prove his innocence and was denied the right to confront the witnesses against him are of no significance. Similarly, his assertion that he was not proved guilty of contempt beyond a reasonable doubt is without merit in view of his admitted refusal to comply with the court's order.

## V

■■ We consider next whether the court erred in denying respondent's offer of proof. This issue arises from the refusal of the trial court to hear additional testimony which Swan sought to present at the contempt trial and its denial of his request to make an offer of proof to substantiate his claims of harassment. While a trial judge has no right to refuse an offer of proof or to deny an attorney the right to make something appear of record (*In re Estate of Undziakiewicz* (1964), 54 Ill. App. 2d 382, 203 N.E.2d 434), in light of the fact that what respondent was attempting to prove was not only immaterial to a charge of contempt, but was an attempt to challenge an earlier ruling of the court, any error is at best harmless.

## VI

Swan next contends that the State's Attorney of Du Page County should have been removed as prosecutor because of a conflict of interest. Although he had been the subject of a grand jury investigation for three years, it was not until the second day of the hearing of the State's petition for contempt that Swan sought to disqualify the State's Attorney. His motion was based upon general allegations that the State's Attorney had represented him in his capacity as a supervisor of York Township and a member of the county board, and that he was still being so represented in several pending suits. Swan argued that there was a conflict of interest and the appearance of impropriety in being investigated by the State's Attorney who, as attorney for the county board, represented him in his official capacity. The court denied the motion after an evidentiary hearing in which respondent was able to establish little more than that he

had been made a party in many suits which were defended by the State's Attorney pursuant to his statutory duties. Ill. Rev. Stat. 1979, ch. 14, par. 5(4).

Respondent appears to seek an extension of the rule announced in *People v. Fife* (1979), 76 Ill. 2d 418, 392 N.E.2d 1345. In that case, our supreme court reversed a conviction for a drug-related offense, holding that an assistant Attorney General, no matter how tenuous his affiliation with that office, could not represent a defendant in a criminal prosecution absent a knowing and intelligent waiver by the accused. *Fife* is clearly inapplicable to the present case. To adopt Swan's position would be to require the appointment of a special prosecutor in every investigation of official misconduct involving county officials. We do not agree that a *per se* conflict of interest arises simply because of the State's Attorney's statutory duty to act as legal advisor to the grand jury and to the county board. Since Swan failed to produce any evidence of a specific conflict of interest, his argument is without merit.

## VII

■■ Swan's final contention is that he was denied his right to a public trial when, on the second day of the hearing of the contempt petition, the trial court directed that the bailiff "clear the court room of everyone who does not belong in on this grand jury proceeding." Respondent made no objection to this order, and the record does not disclose who remained in the court room or if anyone was excluded. However, Swan, his counsel, an assistant State's Attorney, a court reporter and the judge were present for the remainder of the hearing. Swan urges for the first time on appeal that the trial court's actions resulted in his trial being held in secret.

He relies primarily on *In re Oliver* (1947), 333 U.S. 257, 92 L. Ed. 682, 68 S. Ct. 499, where the supreme court reversed a contempt conviction in part because the trial was held in secret. *Oliver*, however, is distinguishable from the present case, as it involved a statutory system under which a judge acted as the grand jury. Oliver was found to be in contempt because the one-judge grand jury believed his testimony to be evasive and inconsistent with that of a prior witness whom Oliver had not even heard testify. His conviction was reversed because he was denied the fundamental rights of written notice of the charges, an opportunity to deny and defend the same, to be represented by counsel, to confront the witnesses against him, in addition to the fact that the "trial" was held in the judge's chambers, without the benefit of a record of any of the proceedings being available to the State appellate courts other than that which the judge chose to include in it.

■■ On the record before us respondent's contention is without merit. He was represented by counsel and we have been provided with a full record

of the proceedings. Moreover, he did not characterize his trial as being held in secret in the trial court, as he raised no objection. Accordingly, any claim of a denial of a right to a public trial is deemed to have been waived. See *People v. Lenninger* (1980), 88 Ill. App. 3d 801, 410 N.E.2d 1157.

For the foregoing reasons respondent's conviction and sentence for contempt is affirmed.

Affirmed.

SEIDENFELD, P. J., and LINDBERG, J., concur.