THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* BARNABAS F. SEARS, Appellant.—THE PEOPLE *ex rel.* BARNABAS F. SEARS, *et al.,* Petitioners, *vs.* JOSEPH A. POWER, Judge, *et al.,* Respondents.

*Opinion filed June 23, 1971.*

Don H. Reuben, Lawrence Gunnels, Steven L. Bashwiner, and Michael W. Coffield, all of Chicago, for appellant.

James J. Doherty, of Chicago, for appellee.

Barnabas F. Sears, *pro se,* and Wayland C. Cedarquist, both of Chicago, for petitioners.

S. Jack Micheletto, and John P. Coghlin, George J. Cotsirilos, all of Chicago, for respondents.

Per Curiam : Barnabas F. Sears, hereafter called Sears, alleging that constitutional issues are involved (Rule 302 (a)), and that the case is one of extraordinary importance (Rule 302(d)), appeals directly to this court from two orders of the circuit court of Cook County adjudging him guilty

of contempt. We allowed the joint motion of Sears and six organizations for leave to file original petitions for writs of *mandamus* and prohibition (Rule 381), and although separately argued, we have *sua sponte* consolidated the appeals and the original actions for consideration and opinion.

The record shows that the January 1970 grand jury of the United States District Court for the Northern District of Illinois, hereafter called the Federal Grand Jury, published a written report, which, although no indictments were voted, was critical of the conduct of certain police officers and other individuals involved in the execution of a search warrant for illegal weapons in an apartment on West Monroe Street in Chicago. During the occurrence, later widely publicized as the Black Panther raid, two members of the Black Panther Party were killed, and several other persons were injured.

A number of individuals and organizations filed petitions in the circuit court of Cook County requesting that a special grand jury be called and a special State's Attorney appointed to investigate the circumstances surrounding the occurrence. On June 26, 1970, the Honorable Joseph A. Power, Presiding Judge, Circuit Court of Cook County, Criminal Division, entered an order which *inter alia* recites that "the Federal Grand Jury Report, publicly issued on May 15, 1970, raises critical and unresolved questions concerning violations of the Illinois Criminal Law by employees of the State's Attorney's Office and employees of the Chicago Police Department as well as possible violations by members of the Black Panther Party and other persons involved in the raid of December 4, 1969, as reported above, and such other persons who, on said December 4th or thereafter, may have been involved in violations of the Illinois Criminal Law relating to this cause."

In the order the court found "1—That the instant cause or proceedings is one in which the States Attorney of Cook County is interested and which is, or may be, his duty to

prosecute or defend and is an appropriate cause or proceeding for the appointment of a competent attorney to prosecute such cause or proceeding with the same power and authority in relationship thereto as the States Attorney would have had if present and attending to the same, all within the provisions of Section 6 of Chapter 14 of the Illinois Revised Statutes; 2—That the matters set forth in said petition are of sufficient importance to confer jurisdiction upon the Court to order a special venire to be issued for a grand jury and that public justice requires it, all within the provisions of Section 19 of Chapter 78 of the Illinois Revised Statutes." The court, *inter alia,* ordered that "It is therefore FURTHER ORDERED that Barnabas F. Sears, Esquire, a member of the Bar of this State, be and he is hereby appointed a Special States Attorney of Cook County, Illinois, to prosecute any matters that may arise from these proceedings and have the same powers and authority in relationship thereto as the States Attorney of Cook County, Illinois, would have had if present and attending to the same, upon his taking the proper oath required by law.

"It is FURTHER ORDERED that Barnabas F. Sears, as a Special States Attorney of Cook County, Illinois, be and he is hereby directed to examine the report of the January, 1970 Grand Jury of the United States District Court, Northern District of Illinois, Eastern Division, dated May 15, 1970, and the transcript, exhibits and other records upon which said report is based, and to take such other and further steps as may be necessary to determine if there were any violations of the criminal laws of the State of Illinois with respect to the subject matters set forth in said Grand Jury Report or averred in said petitions at bar, or related thereto, and to initiate appropriate proceedings, if necessary.

"It is FURTHER ORDERED that the said Barnabas F. Sears, as Special State's Attorney of Cook County, Illinois, be and he is hereby directed to draft the necessary

order or orders for the issuance of a special venire for a grand jury, fixing the return day and providing for the impanelling thereof pursuant to law and present said order or orders to the Court at the earliest opportunity."

On November 4, 1970, Sears filed a petition in the circuit court stating that in compliance with the order of June 26, 1970, he and the assistants appointed by the court had examined the Federal Grand Jury report and the transcript, exhibits and other records upon which the report is based and "that petitioner is presenting his petition for an order for the issuance of a special venire for a grand jury at the earliest opportunity consistent with the due and proper presentation of the matters involved herein to a special grand jury; and that public justice requires the issuance of said special venire."

The court allowed the petition and ordered that a special venire be issued for a grand jury to appear on December 7, 1970, to serve for a period not to exceed 18 months.

On December 7, 1970, Judge Power impanelled and instructed the grand jury. The grand jury, apparently without undue incident, heard a number of witnesses and had before it a number of exhibits including a copy of the report of the Federal Grand Jury report.

On April 22, 1971, at the request of Judge Power, Sears brought the grand jury into Judge Power's court room. After some colloquy Judge Power instructed Sears that every witness who testified before the Federal Grand Jury was to be called before the grand jury.

On April 26, 1971, Sears and the grand jury again appeared before Judge Power. The record reflects extensive colloquy between the court and Sears, culminating in Sears's refusal to obey the order of April 22, 1971. The court thereupon entered two orders, later merged into one written order. The first order finds Sears guilty of contempt for refusing to subpoena for testimony before the grand jury every witness who testified before the Federal Grand Jury, and

imposes a fine of $50 per hour "until such time as he complies with the order of this court to issue subpoenas and endeavor to have all of the witnesses who testified before the January 1970 Federal Grand Jury, testify before the 1970 Special Grand Jury #3." The court also found that certain statements made by Sears outside the court room "were embarrassing to the court and tended to interfere with the administration of justice" and fined him the sum of $100. It is from these orders that Sears appeals.

In the petition for *mandamus* filed in the original proceeding, Sears, the Chicago Bar Association, American Civil Liberties Union, Illinois Division, Businessmen for the Public Interest, Alliance to End Repression, The Lawyers Committee for Civil Rights under Law and the Chicago Council of Lawyers allege the impanelling of the special grand jury, Sears's appointment and other pertinent facts. They further state that one John P. Meade has filed a petition with Judge Power in which it is stated that Meade, by letter dated December 18, 1970, was advised by Sears that his "conduct in the performance of his official duties as a police officer of the City of Chicago is one of the subjects of this pending Grand Jury investigation". The Meade petition further states that the press, radio and television reports of the "workings and deliberations" of the special grand jury "so grossly breach the security of this Grand Jury and so irreparably taint its proceedings as to make further deliberations meaningless and a violation of your petitioner's constitutional rights." The Meade petition further states:

"5) Those reports, if true, further establish an effort by the Special State's Attorney to unlawfully influence said Special Grand Jury and to prevent it from expressing its independent judgment in arriving at its decisions.

"6) The members of the Special Grand Jury herein have not been sequestered, but at all times mentioned herein have been able to examine, see, hear, and become aware of said published and broadcast reports. The coverage in the

mass media of said reports was on such a massive headline basis as to make it inevitable that many, if not all, of said jurors must have become aware of such reports."

There are attached to Meade's petition copies of a number of newspaper articles which purport to review both past and anticipated deliberations and actions of the special grand jury. Meade's petition concludes as follows:

"10) When such improper and public criticism of the Court is foisted upon a sitting Grand Jury, consciously or unconsciously it can serve only to confuse jurors, create bias and frustrate well-reasoned deliberations.

"WHEREFORE, Petitioner prays that the Court, in the exercise of its supervisory powers, discharge the Special Grand Jury."

In the petition for *mandamus* it is also alleged that Meade filed a second petition in the circuit court charging that on April 26, 1971, a news commentator announced that a television channel had learned from Sears that the special grand jury was considering the indictment of the State's Attorney, and praying "that the court make immediate inquiry of the Special States Attorney (Sears) as to the truthfulness of said news source attribution; and if true, discharge instanter the aforesaid Special Grand Jury," that although the TV channel later retracted the statement in its entirety Meade's petition does not mention the retraction.

The petition for *mandamus* further recites that three individuals describing themselves as assistant State's Attorneys of Cook County filed a petition in the circuit court stating therein that they received letters from Sears advising them that their conduct is the subject of investigation by the special grand jury and they would be permitted to testify before the grand jury in connection with the execution of a search warrant at the apartment on West Monroe Street if they executed immunity waivers. In their petition they state that they executed such waivers and appeared and testified. They further state that it has been reported in

various newspapers circulated in the Chicago area that one or more of the petitioners have been named in true bills, that Sears and one or more of his assistants had exceeded their "common law duties of presenting evidence to the Special Grand Jury" and instead "engaged in exhortations, pleas and arguments to the Special Grand Jury that some or all of the petitioners should be indicted by the Special Grand Jury." They allege further that there has been, and the members thereof had been exposed to, a great deal of publicity concerning the grand jury and its deliberations, that the combined effect of the publicity and the proceedings on April 21, 1971, and April 26, 1971 "has necessarily tainted, biased and influenced the grand jurors, either consciously or unconsciously. The grand jurors are no longer able to evaluate the evidence and determine whether or not probable cause exists for the return of indictments against some or all of the petitioners, based solely upon the evidence, and without regard to the improper influences alleged above." Their petition prays that the court "hold an *in camera* hearing to determine whether any of the members of the Special Grand Jury has become biased or has been improperly influenced so that he or she is no longer capable of discharging his or her functions as a grand juror."

The petition for *mandamus* states further that on April 29, 1971, 12 persons, all of whom are Chicago police officers, filed a petition alleging substantially the same facts as are contained in the assistant State's Attorneys' petition, and praying the same relief.

The petition for *mandamus* alleges further that Sears filed motions to dismiss all of said petitions, contending *inter alia* that the petitioners had no standing to inquire into or object to proceedings before the grand jury, and the court was without jurisdiction to grant the relief prayed. The circuit court, on May 17, 1971, entered an order finding that the petitioners "have standing to request the court to determine if improper evidence has been presented or im-

proper influence has been exerted upon the Special Grand Jury by the Special State's Attorneys." The court further found that it had jurisdiction "to hear these issues and also on its own motion to make inquiry of the Special Grand Jury" either by an *in camera* meeting with the special grand jury or by an examination of the transcripts of the minutes of its proceedings "to determine if improper evidence has been presented or improper influence has been exerted on the Special Grand Jury by the Special State's Attorneys." It denied Sears' motions to dismiss the petitions and entered an order which provides: "It is Further Ordered that any pleadings or matters relative to the petitions of the above named petitioners be and the same are hereby deferred until further order of this Court; it is Further Ordered that Barnabas F. Sears, Special State's Attorney in this cause, submit to this Court all the transcripts of the minutes of the meetings of this Special Grand Jury on or before Monday, May 24, 1971. It is Further Ordered that if any indictments be returned, that they are to remain secret until the Court disposes of the said Petitioners' Motion to suppress and quash such indictments." The petition prays that a writ of *mandamus* issue commanding the respondent Power to expunge all of the above described petitions and the order of May 17, 1971.

The petition for *mandamus* states further that the circuit court denied several motions to stay all proceedings pending resolution of the questions by this court and Sears' motion to stay all further proceedings pending application to this court for a writ of *mandamus* or prohibition. Petitioners state further that on May 13, 1971, the foreman of the special grand jury accompanied by Sears had presented to Judge Power on behalf of the special grand jury the question of whether it was permissible for individual grand jurors to comunicate with Judge Power in private, at which time Judge Power stated he would give his response on May 18, 1971. On May 18, 1971, Judge Power met with Sears

and the foreman of the special grand jury in the judge's chambers and with a court reporter present. At that time Judge Power stated that he would permit individual grand jurors to communicate with him privately at any time provided that the grand juror was sworn and a court reporter was present. Sears objected that such procedure was improper and invalid and moved for a stay of such interviews pending application to this court for a writ of prohibition. The stay was denied.

The petition alleges further that Sears and the foreman returned to the grand jury room, the foreman convened the grand jury, Sears announced the ruling of the court and two grand jurors immediately left the grand jury room and were absent for approximately 20 minutes. Sears alleges on information and belief that in their absence the two grand jurors met with Judge Power.

The same petitioners, relying upon the same allegations as are set forth in the petition for *mandamus* pray issuance of a writ of prohibition "directed to the Honorable Joseph A. Power, Presiding Judge, Respondent, restraining and prohibiting him from holding any *in camera* conferences with the individual members of the Special Grand Jury and restraining and prohibiting him from disclosing the matters discussed in prior *in camera* conferences he may have held with individual members of said Special Grand Jury and from considering the same in connection with the rulings or action he may take with respect to any matter involving this Special Grand Jury."

We shall first consider the order of the circuit court adjudging Sears in contempt for refusing to subpoena the witnesses who testified before the Federal Grand Jury to appear and testify before the special grand jury. With respect to this order, Sears contends that the circuit court was without jurisdiction to order either him, or the grand jury, to subpoena these witnesses to appear before the special grand jury. He argues that the grand jury is independ-

ent of the court, beyond judicial control, and has the power to hear such evidence as it desires and indict whom it chooses. The People contend that the circuit court, vested with nonreviewable discretion in determining that a grand jury should be called, is empowered to order that all available testimony relevant to the subject of the grand jury's inquiry be presented to it.

In his argument Sears has presented a scholarly review of the history of the grand jury from its genesis in 1176 upon the issuance of the Assize of Clarendon by Henry II through a stirring account of the fearless grand jury involved in the Earl of Shaftsbury trial. (8 Howell's State Trials 759 (1816).) He states "This signal act of defiance triggered a development in English law that ultimately resulted in English grand juries obtaining autonomy in their operations and deliberations, *i.e.,* freedom from control of both the Crown and the Court. * * * Thus, the English influence of a separate and autonomous grand jury has totally permeated American jurisprudence."

We have reviewed the authorities cited in Sears's brief and they appear to support his contentions that the circuit court cannot limit the scope of the grand jury's investigation and that the grand jury may make presentments of its own knowledge without instructions or authority of the court. These authorities, however, are not relevant to the issues presented in the appeal from the order holding Sears in contempt. The order of the circuit court does not purport to limit the scope of the special grand jury's investigation nor does it purport to limit its power to make presentments of its own knowledge. The appeal with respect to this order presents two issues, and simply stated the questions before us are whether the circuit court has jurisdiction to order that the witnesses be called, and if so, whether the circumstances shown here furnish a sufficient basis for the court to do so. The briefs do not contain, nor have we found, a reported decision which deals with the precise issue

here presented. In our search for the answer to the question presented, we find the comments of Judge Lindley in *In Application of Texas Co.*, (E. D. Ill.) 27 F. Supp. 847, enlightening and with some paraphrasing, particularly appropriate. Judge Lindley stated that the uncertainty as to the grand jury's powers results from the fact that it grew from the English common law, that courts have differed as to its powers and legislation regarding it is extremely meagre. At page 851, he said "It has remained for the courts, tracing the history of the grand jury from the time of early England, to determine for themselves when, upon a particular set of facts and circumstances, a question is presented, just how far a grand jury may properly go or should be allowed to go."

An examination of the pertinent constitutional and statutory provisions shows that the Illinois constitution of 1818 makes no specific mention of the grand jury. Article 8, section 10, provided "That no person shall, for any indictable offense, be proceeded against criminally by information, except in cases arising in the land or naval forces, or the militia when in actual service, in time of war or public danger, by leave of the courts, for oppression or misdemeanor in office."

In the constitution of 1848, article 13, section 10, provides "No person shall be held to answer for a criminal offense unless on the presentment or indictment of a grand jury, except in cases of impeachment, or in cases cognizable by justices of the peace, or arising in the army or navy, or in the militia, when in actual service in time of war or public danger: *Provided*, that justices of the peace shall try no person, except as a court of inquiry, for any offense punishable with imprisonment or death, or fine above $100."

The Constitutional Convention of 1869-1870, after lengthy debate (2 Debates and Proceedings of the Constitutional Convention of Illinois), adopted article II, section 8, which provides "No person shall be held to answer for a

criminal offense, unless on indictment of a grand jury, except in cases in which the punishment is by fine, or imprisonment otherwise than in the penitentiary, in cases of impeachment, and in cases arising in the army and navy, or in the militia, when in actual service in time of war or public danger: *Provided,* that the grand jury may be abolished by law in all cases."

The constitution adopted in 1970 provides:

"No person shall be held to answer for a criminal offense unless on indictment of a grand jury, except in cases in which the punishment is by fine or by imprisonment other than in the penitentiary, in cases of impeachment, and in cases arising in the militia when in actual service in time of war or public danger. The General Assembly by law may abolish the grand jury or further limit its use.

"No person shall be held to answer for a crime punishable by death or by imprisonment in the penitentiary unless either the initial charge has been brought by indictment of a grand jury or the person has been given a prompt preliminary hearing to establish probable cause." Article I, sec. 7.

With respect to the calling of a special grand jury, section 19 of The Jurors Act (Ill. Rev. Stat. 1969, ch. 78, par. 19) contains the following provision enacted in 1873 and amended in 1965 to conform to the Judicial Article of the constitution (article VI), "The judge of any court of competent jurisdiction may order a special venire to be issued for a grand jury at any time when he shall be of opinion that public justice requires it."

The statutory provision with respect to witnesses before the grand jury, enacted in 1827 (Rev. Laws 1827, p. 162, § 175) provided "In all complaints exhibited before the grand jury of any county, they shall hear the witnesses, on behalf of the people only." This provision was re-enacted in 1833 (Rev. Laws 1833, p. 213, § 177), in 1845 (Rev. Stat. 1845, p. 186, § 187), in 1874 (Rev. Stat. 1874, p. 407), and remained in force and effect until the enactment of section

112—4(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1969, ch. 38, par. 112—4(a)) which provides "The Grand Jury shall hear all evidence presented by the State's Attorney."

Section 5 of "An Act in Regard to Attorneys General and State's Attorneys" (Ill. Rev. Stat. 1969, ch. 14, par. 5) (approved March 22, 1872, L. 1871-2, p. 190), as amended in 1967, provides that one of the duties of the State's Attorney shall be "To commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in the circuit court for his county, in which the people of the state or county may be concerned." This provision has been in force and effect virtually without change or modification since February 19, 1827. Revised Laws of Illinois 1833, Revised Statutes of Illinois 1845, Illinois Laws 1873-4.

Section 6 of the same act provides that a special State's Attorney "shall possess all the powers and discharge all the duties of a regularly elected state's attorney * * *."

In *People* v. *McCauley*, 256 Ill. 504 at page 508, the court said "The grand jury is a necessary constituent part of every court having general criminal jurisdiction, especially in jurisdictions like ours, where crimes above the grade of misdemeanors can only be prosecuted upon the presentment of a grand jury. (*Boone* v. *People*, 148 Ill. 440.) The grand jury must necessarily, like other agencies provided to enable the court to administer justice and enforce the law, be to a large extent under the control and subject to the direction of the court. (20 Cyc. 1294.) If we had no statute providing for the calling and empaneling of a grand jury, clearly circuit courts in this State could assemble and organize a grand jury, under their general common law powers, during any regular term when in their discretion they deemed it necessary to do. (20 Cyc. 1295, and cases there cited.) The court had the power to call a special grand jury, if necessary, and this power existed independently of the statute."

This is in accord with the holding of *In re National Window Glass Workers* (N.D. Ohio E.D.), 287 Fed. 219 wherein at page 225 the court said "A grand jury has no existence aside from the court which calls it into existence and upon which it is attending. A grand jury does not become, after it is summoned, impaneled, and sworn, an independent planet, as it were, in the judicial system, but still remains an appendage of the court on which it is attending. * * * All indictments or presentments of a grand jury become effective only when presented in court and a record is made of such action. A grand jury is not, therefore, and cannot become, an independent, self-functioning, uncontrollable agency. It is and remains a grand jury attending on the court, and does not, after it is organized, become an independent body, functioning at its uncontrolled will, or the will of the district attorney or special assistant. The process by which witnesses are compelled to attend a grand jury investigation is the court's process and not the process of the grand jury, nor of the district attorney. If a witness fails to attend, the power, as well as the duty, to compel his attendance, is vested in the court. If, after appearing, he refuses to testify, the power, as well as the duty, to compel him to give testimony is vested in the court, and not in the grand jury. It can therefore never become an immaterial matter to the court what may be done with its process or with its grand jury. A court would not be justified, even if it were so inclined, to create or call into existence a grand jury, and then go off and leave it. A supervisory duty, not only exists, but is imposed upon the court, to see that its grand jury and its process are not abused, or used for purposes of oppression and injustice."

"The grand jury is an arm of the court and its in camera proceedings constitute a 'judicial inquiry'." *Levine* v. *United States,* 362 U.S. 610, 617, 4 L. Ed. 2d 989, 995, 80 S. Ct. 1038, 1043.

In *Freeman* v. *Chicago Transit Authority,* 33 Ill.2d 103,

holding that a trial judge had authority to grant a new trial of his own motion, this court at page 106 said "* * * in those jurisdictions that have considered the question the power is firmly established. [Citations.] These decisions are based upon a recognition that the role of a trial judge is not that of a presiding officer or an umpire, and that he is responsible for the justice of the judgment that he enters. The defendant's argument would take away that responsibility and tend to reduce his role to that of an automaton."

The responsibility of the circuit judge with respect to criminal matters is equally great. Paragraph 19 of the Jurors Act makes it apparent that a special grand jury may be called when the judge is "of opinion that public justice requires it" and section 112—3(a) of the Code of Criminal Procedure of 1963, applicable to Cook County, provides that "a Grand Jury shall serve until discharged by the court, * * *." Although the statute imposes upon the State's Attorney the duty to commence and prosecute all indictments and prosecutions (Ill. Rev. Stat. 1969, ch. 14, par. 5) he may not enter a *nolle prosequi* without the approval of the court. (*People ex rel. Hoyne* v. *Newcomer*, 284 Ill. 315.) Whether, and under what circumstances, a special State's Attorney is to be appointed rests within the sound discretion of the court. Ill. Rev. Stat. 1969, ch. 14, par. 6; *People* v. *Strosnider*, 264 Ill. 434.

It is true that it is the duty of the grand jury to inquire into offenses which shall come to its knowledge "whether from the court, the State's Attorney, its own members, or from any source" (*People* v. *Polk*, 21 Ill.2d 594, 598), but it is clear from the holding in *People* v. *Parker*, 374 Ill. 524, that the proper channel for presenting information to the grand jury is the State's Attorney (see page 528) and it is improper to communicate directly with the grand jury. "'Sending an unofficial volunteer communication to the grand jury, inviting them to start, on their own authority, a prosecution, is a contempt of court, and a misdemeanor at

common law.' To this same effect is *Commonwealth* v. *Crans,* 2 Pa. L. J. *172." (People* v. *Parker,* 374 Ill. 524, 528.) In the opinion at page 528, the court quoted with approval from Mr. Justice Field's charge to the Federal grand jury (30 Fed. Cases 992), as follows: "You will not allow private prosecutors to intrude themselves into your presence and present accusations. Generally such parties are actuated by a private enmity and seek merely the gratification of their personal malice. If they possess any information justifying the accusation of the person against whom they complain they should impart it to the district attorney who will seldom fail to act in a proper case, but if the district attorney should refuse to act they can make their complaint to a committing magistrate before whom the matter can be investigated and if sufficient evidence be produced of the commission of the public offense by the accused, he can be held to bail to answer to the action of the grand jury." In our opinion it is implicit in the statement of Mr. Justice Field that upon failure of the district attorney to act in a proper case, the court will act in order to assure that the evidence is presented to the grand jury.

It is clear from the language of *People* v. *Polk* that it is the duty of the grand jury to inquire into offenses which come to its knowledge whether from the court, the State's Attorney, its own members, or from any source. If from its own members, the following provision from section 19 of the Jurors Act is applicable: "No grand jury shall make presentments of their own knowledge, upon the information of a less number than 2 of their own body, unless the juror giving the information is previously sworn as a witness, in which case, if the evidence shall be deemed sufficient, an indictment may be found thereon in like manner as upon the evidence of any other witness who may not be of the jury." Clearly, *People* v. *Parker* holds that information from "any source" must come through the State's Attorney. The quaint concept of the English common law that a grand jury can,

of itself, proceed with an investigation is not valid in this stage of our history. In *Watts* v. *Indiana,* 338 U.S. 49, 93 L. Ed. 1801, 1805, 69 S. Ct. 1347, 1349, Mr. Justice Frankfurter said "And there comes a point where this Court should not be ignorant as judges of what we know as men." As men and lawyers we know that a grand jury cannot proceed with an investigation without the investigatory staff of the State's Attorney, the police or the sheriff, and that it cannot prepare subpoenas or indictments without assistance of counsel. It is apparent, therefore, that to adopt the rule for which Sears contends would vest in the State's Attorney the nonreviewable discretion as to what evidence is to be presented to the grand jury. This in our opinion could lead to abuse of the process, purpose and function of the grand jury and is inconsistent with its historic place in our system of justice.

We hold, therefore, that there may be circumstances under which the circuit court will have jurisdiction to direct that witnesses be subpoenaed to appear before a grand jury. The preservation of the historic independence of the grand jury, however, requires that such supervisory power be exercised only when failure to do so will effect a deprivation of due process or result in a miscarriage of justice. It is the opinion of the majority of members of this court that the circumstances shown here do not furnish a sufficient basis for the action of the court and the order holding Sears in contempt for refusing to subpoena the witnesses is therefore reversed.

We turn now to the order of contempt based upon the court's finding that statements made by Sears outside the courtroom "were embarrassing to the court and tended to interfere with the administration of justice."

Sears argues that the contempt, if any, was an indirect contempt and the record plainly shows that the proceedings were utterly lacking in the basic requirements of due process. The People contend that the acts upon which the

finding of contempt is based were committed in the corridors adjacent to the courtroom and were therefore, under the authorities, deemed to have been in the presence of the court. Citing *In re Estate of Melody,* 42 Ill.2d 451, the People argue further that assuming Sears's conduct may be deemed indirect contempt, since it was admitted, it may be punished as a direct contempt. In our opinion the situation here presented is clearly distinguishable from that in *Melody.* It appears that in order to determine whether Sears's conduct was contemptuous and tended to interfere with the administration of justice it was necessary for the trial court to secure and consider extrinsic evidence as to matters not within its knowledge. The record does not reflect with sufficient clarity that Sears's admissions supply the requisite evidence. Under the circumstances a hearing is necessary and the order therefore will be reversed and this portion of the cause remanded. *People ex rel. Melendez* v. *Melendez,* 47 Ill.2d 383.

We consider now the petitions for issuance of writs of *mandamus* and prohibition. With respect to the nature of the writ of *mandamus* and the circumstances under which it will issue, the long established rule is well stated in *People ex rel. Dolan* v. *Dusher,* 411 Ill. 535, wherein at page 538, we said: "*Mandamus* is a summary, expeditious and drastic common-law writ of an extraordinary character, sometimes referred to as the highest judicial writ known to the law. (*People ex rel. Koester* v. *Board of Review,* 351 Ill. 301.) Original jurisdiction of the Supreme Court to issue *mandamus* obtains only in causes involving questions of public right, in which *mandamus* may be issued as a prerogative writ. Furthermore, *mandamus* can be invoked to expunge a judgment only when the judgment complained of is void for want of jurisdiction either of the subject matter, of the parties, or to enter the order complained of."

The rule governing issuance of the writ of prohibition is stated in *People ex rel. Town Court of Cicero* v. *Har-*

*rington,* 21 Ill.2d 224, wherein, at page 226, we said: "A writ of prohibition is an extraordinary judicial process whereby a superior court may prevent inferior tribunals or persons from exercising a jurisdiction with which they have not been vested by law." This court, however, charged with the supervisory and administrative powers and duties provided in the constitution, may, when appropriate, award these writs even though all of the normal criteria are not present. *People ex rel. General Motors* v. *Bua,* 37 Ill.2d 180, 192; *People ex rel. Continental Air Transport Co., Inc.* v. *Strouse,* 41 Ill.2d 567, 570.

The questions presented in these petitions are whether the circuit court properly entered its order of May 17, 1971, and whether it may proceed to interview the members of the grand jury in accordance with its order of May 18, 1971.

Petitioners, in their brief, have reviewed at length the opinion in *United States* v. *Smyth,* 104 F. Supp. 283 and on the basis thereof argue that " 'No other instrument (the grand jury) can cope with * * * alleged deviations from rectitude by those who have been entrusted by the Government with public trust'. The grand jury breathes the spirit of a community into the enforcement of law. Its effect as an institution for investigation of all, no matter how highly placed, created the elan of democracy. Here the people speak through their chosen representatives. The Grand Jury is the essence of the rule of the people."

It is difficult to reconcile this argument with the fact that in Great Britain and in at least 22 of the 50 United States the grand jury has been abolished, and that in Illinois it requires only the action of the General Assembly to do likewise.

Much of petitioners' brief is devoted to argument that those respondents (Meade, the assistant State's Attorneys and the police officers) who filed the three petitions in the circuit court are without standing to do so and that the court erred in permitting the petitions to be filed. We do not find

authority in *People ex rel. Benefit Ass'n of Railway Employees* v. *Miner,* 387 Ill. 393, or *People ex rel. Kilduff* v. *Brewer,* 328 Ill. 472, cited by petitioners, that the court was without jurisdiction to permit the filing of the petitions. It should further be noted that the court set a pleading schedule with respect to the petitions and no action has been taken other than to permit them to be filed.

The substance of petitioners' argument in support of the issuance of the writs is that although admittedly Sears's conduct before the grand jury is not above judicial scrutiny, such scrutiny may be invoked only after indictment and "is justified only where by proper verified pleading a clear and positive showing is made of gross and prejudicial irregularity influencing the grand jury in returning indictments."

The respondents, who are Judge Power and the individuals who filed the three petitions in the circuit court, contend that the circuit court has general supervisory power over the grand jury while it is in session, which supervisory power may be exercised prior to indictment, and has jurisdiction to conduct appropriate inquiries while the grand jury is still sitting.

In the view of the case taken by the majority of the members of the court we need not, and therefore we do not decide whether the individual respondents who filed the petitions in the circuit court had standing to do so. If the circuit court had jurisdiction to enter the orders of May 17, and May 18, 1971, its jurisdiction is neither invoked, expanded nor limited by the petitions, but stems from its inherent supervisory powers over the grand jury. *In re Grand Jury Investigation (General Motors Corp.)* (U.S. Dist. Ct. S.D.N.Y. 1963), 32 F. R. D. 175.

The Code of Criminal Procedure of 1963 clearly authorizes inquiry into the proceedings before the grand jury (sec. 114—1(9)) and provides for disclosure of matters occurring before it, other than its deliberations and vote (sec. 112—6(b)). It is therefore apparent that the veil of

secrecy which petitioners contend enshrouds the proceedings before the grand jury has been rendered considerably less ópaque than in former years.

In *People* v. *Ianniello,* 21 N.Y.2d 418, the Court of Appeals of New York said "Courts have a particular responsibility to prevent unfairness in Grand Jury proceedings for the Grand Jury is an "arm of the court" (235 N.E.2d 439, 443). The exercise of the power necessary to discharge this "particular responsibility" does not require a claim of abuse of process of one who has standing to make it, for the court has inherent power to supervise the grand jury so as to prevent the perversion of its process. *In re National Window Glass Workers* (N. D. Ohio E.D. 1922), 287 Fed. 219, 224; *Application of Iaconi,* 120 F. Supp. 589; *Application of Texas Co.* (E. D. Ill. 1939), 27 F. Supp. 847.

In *People* v. *Maslowsky,* 34 Ill.2d 456, this court affirmed the order of the circuit court of Sangamon County insofar as it quashed subpoenas and suppressed use of certain tapes, transcripts or excerpts before the grand jury.

Petitioners, citing *In re Grand Jury Subpoena To Central States,* 225 F. Supp. 923, and *People* v. *Maslowsky* concede that the grand jury, prior to return of an indictment, is subject to the supervisory power of the court where questions of the court's process are involved. They contend, however, citing *People* v. *De Filippis,* 34 Ill.2d 129, that cases involving pre-indictment suppression of evidence do not involve penetration of the secrecy of grand jury proceedings. We fail to see how *De Filippis* supports this contention but note that the court said at page 135 "that the conventional concepts of standing must give way whenever it is necessary to prevent unfairness."

Much of petitioners' argument deals with the necessity for secrecy of the grand jury proceedings contending that a prosecutor can not fearlessly perform his duties if at any time the court "can intrude itself in these proceedings and exercise the powers claimed here." The short answer to that

is that the grand jury is an integral part of the court and not the tool of the prosecutor and neither the prosecutor nor the grand jury is vested with power to proceed without regard to due process.

Nor do we find persuasive the argument that a defendant wrongfully indicted has his day in court at trial, and assuming vindication by acquittal has not been harmed thereby. We agree with the statement in *In re Fried* (2d cir.), 161 F.2d 453, that a wrongful indictment inflicts substantial harm on a defendant not entirely remedied by acquittal. That a court may act prior to indictment to prevent injustice and abuse of process is settled law. See *Austin* v. *United States* (4th cir.), 297 F.2d 356, and cases cited therein.

It is the opinion of the majority of this court that the circuit court, in the exercise of its inherent supervisory powers over the grand jury has jurisdiction to order the transcript of the proceedings before the grand jury submitted to it for examination as provided in the order entered on May 17, 1971, and we so hold. The petition for a writ of *mandamus* is, therefore, denied.

With respect to the circuit court's announcement of his availability to those jurors who wish to communicate with him privately, it is our opinion that such procedure is not desirable and presents the possibility of infringement upon the historic independence of the grand jury and its proceedings. We hold that the court has jurisdiction to meet *in camera* with the grand jury. Insofar as the petitioners seek a writ of prohibition to preclude *in camera* communication between the court and individual grand jurors, the writ of prohibition will issue, and in all other respects the petition for writ of prohibition is denied.

We need not further discuss the nature of the alleged improprieties in the proceedings before the grand jury nor the newspaper articles allegedly based upon information obtained in violation of the secrecy of the grand jury pro-

ceedings. At this stage these cases present no issue of whether there is a sufficient basis for action by the circuit court upon completion of its examination of the transcripts and its interviews, if any, with the grand jury. They present the question of whether the circuit court, upon learning of alleged improprieties, may examine the transcript and conduct *in camera* interviews with the grand jury, if so requested by it, to determine whether, in fact, there is a basis for action by the court.

> *Orders of the circuit court reversed in part and remanded. Petition for writ of mandamus denied and petition for writ of prohibition allowed in part and denied in part, and writ so awarded.*