In re **GRAND JURY 89–2.**

**UNITED STATES of America**

v.

**John DOE NO. A89–090.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Jan. 17, 1990.

---

Lawrence J. Leiser, Asst. U.S. Atty., Alexandria, Va., for plaintiff.

David Rosenfeld, Alexandria, Va., for defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

This matter came before the Court on the motion of William Love, joined by Choice Supply, Inc. and Penguin Feathers, Inc., to compel the United States to present certain alleged exculpatory evidence to the grand jury. Specifically, movants argued that their rights under the Fifth and Sixth Amendments of the Constitution would be infringed unless the government submitted to the grand jury a thirty-six page United States International Trade Commission Report ("ITC Report")[1] on the effectiveness of the Mail Order Drug Paraphernalia Control Act, 21 U.S.C. § 857 (the "Act").[2] For

---

1. United States International Trade Commission, *Introduction of Certain Drug Paraphernalia Into the United States*, Report to the Committee on Finance, United States Senate, on investigation No. 332–277 under Section 332 of the Tariff Act of 1930 (1989).

2. In essence, the Act makes it unlawful (i) to offer drug paraphernalia for interstate sale or transportation, or (ii) to use the mail as part of a scheme to sell such paraphernalia, or (iii) to import or export drug paraphernalia. 21 U.S.C. § 857(a). "Drug paraphernalia" is defined as follows:

   **(d) Definition of "drug paraphernalia"**
   The term "drug paraphernalia" means any equipment, product, or material of any kind which is primarily intended or designed for use in manufacturing, compounding, converting, concealing, producing, processing, preparing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance.... It includes items primarily intended or designed for use in ingesting, inhaling, or otherwise introducing marijuana, cocaine, hashish, hashish oil, PCP, or amphetamines into the human body, such as—

   (1) metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes with or without screens, permanent screens, hashish heads, or punctured metal bowls;
   (2) water pipes;
   (3) carburetion tubes and devices;
   (4) smoking and carburetion masks;
   (5) roach clips: meaning objects used to hold burning material, such as a marihuana cigarette, that has become too small or too short to be held in the hand;
   (6) miniature spoons with level capacities of one-tenth cubic centimeter or less;
   (7) chamber pipes;
   (8) carburetor pipes;
   (9) electric pipes;
   (10) air-driven pipes;
   (11) chillums;
   (12) bongs;
   (13) ice pipes or chillers;
   (14) wired cigarette papers; or
   (15) cocaine freebase kits.
   **(e) Matters considered in determination of what constitutes drug paraphernalia**
   In determining whether an item constitutes drug paraphernalia, in addition to all other logically relevant factors, the following may be considered:

the reasons stated herein, the Court concludes that the motion is meritless and must be denied.

## I.

The facts are straightforward and may be simply stated. Movant Love believes he is the target of an ongoing grand jury investigation in the Eastern District of Virginia, focusing on potential violations of the Act. For the past nine years, Love has owned and operated a retail store in Prince William County, Virginia. The store sells pipes, T-shirts, jewelry, magazines and other items. Recently, a number of the store's pipes were seized by government agents pursuant to a search warrant. It is apparently the government's view that the pipes qualify as prohibited drug paraphernalia under the Act. Love contends otherwise. Movants Choice Supply, Inc. and Penguin Feathers, Inc. believe they are also targets of the same grand jury investigation. They, too, contend the government is mistaken in its belief that various pipes and related items they offer for sale are prohibited drug paraphernalia.

Because they believe the ITC report is exculpatory in this regard, all three movants ask this Court to compel the government to present the Report to the grand jury. Specifically, they point out that the

(1) instructions, oral or written, provided with the item concerning its use;
(2) descriptive materials accompanying the item which explain or depict its use;
(3) national and local advertising concerning its use;
(4) the manner in which the item is displayed for sale;
(5) whether the owner, or anyone in control of the item, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products;
(6) direct or circumstantial evidence of the ratio of sales of the item(s) to the total sales of the business enterprise;
(7) the existence and scope of legitimate uses of the item in the community;
(8) expert testimony concerning its use.

3. Movants asserted without citation or argument that the Act requires specific knowledge for conviction.

4. According to movants, the government, too, fell prey to the Act's vagueness, as some of the

ITC Report labels the Act's "drug paraphernalia" definition as "ambiguous" and "nebulous." Movants argue that this "key evidence" concerning the Act's vagueness bears directly on whether movants could reasonably be found to have "knowingly sold" any prohibited drug paraphernalia under the Act.[3] In short, movants contend the ITC Report is "highly relevant" to the criminal intent required to find a violation of the Act. In response, the government contends the ITC Report incriminates, not exculpates, movants because it describes in detail the items that fall within the scope of the term "drug paraphernalia", and all the items seized from movants' premises fall squarely within the Report's description.[4]

## II.

The narrow question presented—whether the Court should compel the government to disclose the ITC Report to the grand jury—raises the broader, more fundamental issue concerning the existence and scope of courts' supervisory powers over grand juries and their functions. Courts, it seems clear, have such supervisory powers.[5] But these supervisory powers are limited, not plenary in nature. They are limited because grand juries are necessarily clothed with a measure of independence and because the Executive

pipes seized from Love's store were returned, presumably because they were ultimately found not to fit the Act's definition of "drug paraphernalia."

5. The most familiar of these supervisory powers is the power to limit, modify or quash subpoenas and subpoenas *duces tecum* due to a grand jury's reliance on a court to compel the production of books, papers, documents and testimony. *See United States v. Calandra*, 414 U.S. 338, 346 n. 4, 94 S.Ct. 613, 619, n. 4, 38 L.Ed.2d 561 (1974); Fed.R.Cr.P. 17(c). Other examples of supervisory powers include adjudicating challenges to the panel array or to an individual juror, Fed.R.Cr.P. 6(b)(1), and granting permission to disclose the proceedings of a grand jury, Fed.R.Cr.P. 6(e)(3). For a survey of federal courts' supervisory powers over grand juries see Beale, *Reconsidering Supervisory Power in Criminal Cases: Constitutional and Statutory Limits on the Authority of the Federal Courts*, 84 Colum.L.Rev. 1433, 1455–64 (1984).

Branch, through its prosecutors, properly enjoys certain grand jury prerogatives. Absent the ability to act "independently of either prosecuting attorney or judge," grand juries could not fulfill their dual roles of accusing those who may be guilty and clearing the innocent. *Stirone v. United States*, 361 U.S. 212, 218, 80 S.Ct. 270, 273–74, 4 L.Ed.2d 252 (1960).[6] Similarly, the Executive Branch could not meet its constitutional obligation to enforce the laws unless prosecutors enjoyed broad discretion in such matters as determining which witnesses to call and what evidence to present to the grand jury.[7] But grand juries may exceed the bounds of their independence and prosecutors may abuse their prerogatives.[8] These possibilities give rise to the courts' grand jury supervisory powers,[9] including the power, in very limited circumstances, to direct that certain evidence be presented to the grand jury.[10]

Defining the very limited circumstances in which courts should direct that certain evidence be presented to a grand jury must be guided by "the polestar that a court should not intervene in the grand jury process absent a compelling reason." *United States v. (Under Seal)*, 714 F.2d 347, 350 (4th Cir.), *cert. dismissed*, 464 U.S. 978, 104 S.Ct. 1019, 78 L.Ed.2d 354 (1983) (citing *United States v. Dionisio*, 410 U.S. 1, 16–18, 93 S.Ct. 764, 772–73, 35 L.Ed.2d 67 (1973)). The Fourth Circuit has not been squarely presented with an opportunity to apply this polestar principle in circumstances precisely like those at bar. There can be little doubt, however, that only extraordinary circumstances would furnish the "compelling reason" necessary to warrant

**6.** *See also United States v. Calandra*, 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974) (grand jury is "a protector of citizens against arbitrary and oppressive governmental action"); *United States v. Dionisio*, 410 U.S. 1, 16–17, 93 S.Ct. 764, 772–73, 35 L.Ed.2d 67 (1973) (grand jury's "mission is to clear the innocent, no less than to bring to trial those who may be guilty").

**7.** *See United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 430, 103 S.Ct. 3133, 3141, 77 L.Ed.2d 743 (1983); *United States v. Pabian*, 704 F.2d 1533, 1536 (11th Cir.1983). Of course, as noted in *Sells Engineering*, the grand jury, too, may itself decide to investigate a matter or to seek certain evidence. 463 U.S. at 430, 103 S.Ct. at 3141.

The government's discretion in managing grand jury proceedings has led some courts to suggest that courts' supervisory power over grand jury proceedings is significantly limited by the separation of powers doctrine. *See United States v. Chanen*, 549 F.2d 1306, 1313 (9th Cir.), *cert. denied*, 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 83 (1977).

**8.** Courts, too, can abuse their supervisory powers. *See United States v. United States District Court*, 238 F.2d 713 (4th Cir.1956), *cert. denied*, 352 U.S. 981, 77 S.Ct. 382, 1 L.Ed.2d 365 (1957) (refusal to allow subpoenas and refusal to permit government counsel to have a transcript of the testimony or to digest it for the grand jury constituted an unwarranted interference with the proper functioning of the grand jury).

**9.** For brief summaries on judicial supervision of grand jury proceedings, *see* 1 W. LaFave & J. Israel, *Criminal Procedure* § 8.4(c) (1984); 1 C.

Wright, *Federal Practice and Procedure: Criminal* § 101 (2d ed. 1982).

**10.** For decisions recognizing the existence of this power see *In re Application of Wood*, 833 F.2d 113, 116 (8th Cir.1987) (district court, exercising its supervisory powers, may direct that the prosecutor make a second presentation of allegations of perjury by an FBI agent to grand jury or, failing compliance by the prosecutor, that the individual making the perjury allegations be permitted to testify before grand jury); *O'Bryan v. Chandler*, 352 F.2d 987, 990 (10th Cir.1965) (district judge has power to direct evidence be presented to grand jury), *cert. denied*, 384 U.S. 926, 86 S.Ct. 1444, 16 L.Ed.2d 530 (1966); *People v. Sears*, 49 Ill.2d 14, 273 N.E.2d 380 (1971) (*per curiam*) (there may be circumstances where a court can order a prosecutor to present certain witnesses to a grand jury); *cf. United States v. Gold*, 470 F.Supp. 1336, 1353 (N.D.Ill.1979) (indictment dismissed for failure to present exculpatory evidence to grand jury); *United States v. Phillips Petroleum Co.*, 435 F.Supp. 610, 619–22 (N.D.Okla.1977) (same).

For decisions to the contrary in a post-indictment setting see *United States v. Sears, Roebuck & Co.*, 719 F.2d 1386, 1394 (9th Cir.1983) (prosecutor not required to present exculpatory evidence to grand jury), *cert. denied*, 465 U.S. 1079, 104 S.Ct. 1441, 79 L.Ed.2d 762 (1984); *United States v. Al Mudarris*, 695 F.2d 1182, 1185 (9th Cir.) (same), *cert. denied*, 461 U.S. 932, 103 S.Ct. 2097, 77 L.Ed.2d 305 (1983); *United States v. Cederquist*, 641 F.2d 1347, 1353 n. 3 (9th Cir. 1981) (same); *United States v. Leverage Funding Sys.*, 637 F.2d 645, 648 (9th Cir.1980) (same, nor does prosecutor have a legal obligation to permit target to testify before grand jury), *cert.*

the exceptional remedy sought here. This point is well illustrated by the decision in *People v. Sears*, 49 Ill.2d 14, 273 N.E.2d 380 (1971) (*per curiam*). There, a presiding judge had ordered a special prosecutor to present certain witnesses to a state grand jury when it appeared that those witnesses had testified before a federal grand jury that had refused to indict after investigating the same matter. The Illinois Supreme Court acknowledged that the presiding judge had the power to issue such an order but held that the circumstances presented did not warrant it. In reaching this conclusion, that court noted:

> The preservation of the historic independence of the jury ... requires that such supervisory power be exercised only when failure to do so will effect a deprivation of due process or result in a miscarriage of justice.

273 N.E.2d at 389.

This is the proper test; it correctly limits narrowly the circumstances that may warrant pre-indictment judicial interference with the grand jury process.[11] The stringency of the test appropriately accommodates the fact a grand jury is an *"ex parte investigation"* to determine whether criminal proceedings should be brought against a person; it is not an adversary hearing to determine the guilt or innocence of a person. *United States v. Calandra,* 414 U.S. 338, 343–44, 94 S.Ct. 613, 617–18, 38 L.Ed.2d 561 (1974). The test's stringency, therefore, is required to strike the proper balance between achieving grand jury efficiency and avoiding grand jury abuse. Indeed, were the test any less stringent, the grand jury's purpose would be wholly subverted by importing into its proceedings evidence and issues that belong solely in the trial. Mr. Justice Black put this point well in a case where the Supreme Court unanimously rejected a challenge to an indictment on the ground that it rested solely on hearsay evidence.

> If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment. An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more.

*Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 408–09, 100 L.Ed. 397 (1956) (footnote omitted).

In sum, then, this Court's grand jury supervisory powers include the power, in extraordinary circumstances, to direct the presentation of certain evidence to the grand jury. But this power should be exercised only when the failure to do so would result in a clear deprivation of due process

---

denied, 452 U.S. 961, 101 S.Ct. 3110, 69 L.Ed.2d 972 (1981).

**11.** The standard for the post-indictment exercise of judicial review of grand jury proceedings need not be quite so stringent given the absence, in that context, of the element of direct interference with ongoing grand jury proceedings. Moreover, courts in the post-indictment setting typically have much better perspective on whether certain testimony or evidence is significantly exculpatory and whether the failure to adduce such evidence before the grand jury seriously distorts the process or results in substantial prejudice. For formulations of post-indictment standards, *see United States v. Chanen,* 549 F.2d 1306, 1313 (9th Cir.1977) ("given the constitutionally-based independence of each of the three actors—court, prosecutor and grand jury— ... a court may not exercise its 'supervisory power' in a way which encroaches on the prerogatives of the other two unless there is a clear basis in fact and law for doing so"), *cert. denied,* 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 83 (1977); *United States v. Dorfman,* 532 F.Supp. 1118, 1133 (N.D.Ill.1981) (failure to present exculpatory evidence that "clearly negates the target's guilt" is flagrant abuse of prosecutor's power); *cf. In re Special April 1977 Grand Jury,* 587 F.2d 889, 893 (7th Cir.1978) (noting that United States Attorney's manual directs federal prosecutors to present "substantial evidence directly exculpating" a target to a grand jury); *United States v. Narciso,* 446 F.Supp. 252, 296–97 (E.D. Mich.1977) (court refused to dismiss indictment but did not make standard clear); 1 ABA Project on Standards for Criminal Justice, *ABA Stan-*

or a manifest miscarriage of justice. The question, then, is whether the case at bar presents the extraordinary circumstances that fit this stringent test. More precisely, the question is whether the government's failure to present the ITC Report to the grand jury would result in a due process violation or a manifest miscarriage of justice.

### III.

■ In an effort to meet this stringent test for court intervention, movants' contend that the ITC Report exculpates them and that their Fifth and Sixth Amendment rights would be infringed unless the government is compelled to submit the Report to the grand jury. This contention is meritless; the Report does not exculpate movants. It is nothing more than a report on the scope of illicit drug paraphernalia imports and the Act's efficacy in this context. Moreover, it was prepared by three staff members of a civil agency with no criminal enforcement jurisdiction. The three authors' opinion concerning the ambiguity or nebulousness of the Act's drug paraphernalia definition does not establish movants' innocence of crimes under the Act. Indeed, there is no reason to conclude that the Report would ever be admissible at trial or subject to pretrial production pursuant to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).[12] At best, the Report is analogous to a law review note or comment on the Act. As such, whatever uses the Report may have,[13] it cannot carry the burden movants place on it. Its contents provide no "compelling reason" for this Court to interfere with the grand jury process. *See United States v. (Under Seal),* 714 F.2d 347, 350

(4th Cir.), *cert. dismissed,* 464 U.S. 978, 104 S.Ct. 1019, 78 L.Ed.2d 354 (1983). The government's decision not to present the ITC Report to the grand jury resulted in neither a due process violation, nor a manifest miscarriage of justice.

Movants' cited authorities are not to the contrary; they are inapposite; none involves the propriety of a pre-indictment judicial command to a prosecutor to present certain evidence to the grand jury; instead, movants' cases concern post indictment consideration of various allegations of prosecutor misconduct before the grand jury. As already noted,[14] there is good reason to impose a more stringent standard for the exercise of pre-indictment, as compared to post-indictment, judicial grand jury supervisory powers. Absent from the later instance is the element of judicial interference with an on-going process, thereby causing disruption, inefficiency and impairment of the grand jury's independence. Moreover, judgments concerning the nature and effect of presenting or not presenting certain evidence to the grand jury are more confidently and appropriately made from the post-indictment perspective.

But even putting aside this important distinction, movants' cited cases still are not persuasive authority for the remedy they advocate in this case. On the contrary, these seven decisions are generally consistent with, and supportive of, the result reached here. Thus, four of the seven deny relief in the face of claims that the grand jury had been denied access to exculpatory evidence. In *United States v. Dorfman,* 532 F.Supp. 1118 (N.D.Ill.1981), the prosecutor chose not to present to the

---

*dards for Criminal Justice,* Std. 3–3.6(b) (2d ed. 1980).

**12.** It is worth emphasizing that the *Brady* standard has no application at the pre-indictment stage. At this stage, a prosecutor is not obligated to search for and present evidence favorable to targets. *See United States v. Y. Hata & Co.,* 535 F.2d 508, 512 (9th Cir.), *cert. denied,* 429 U.S. 828, 97 S.Ct. 87, 50 L.Ed.2d 92 (1976); *United States v. Ruyle,* 524 F.2d 1133, 1135–36 (6th Cir.1975), *cert. denied,* 425 U.S. 934, 96 S.Ct. 1664, 48 L.Ed.2d 175 (1976).

**13.** Conceivably, the Report might be cited in support of a facial challenge to the validity of the Act on vagueness grounds. *See Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) (constitutionality of "head shop" statute upheld); Annotation, *Validity, Under Federal Constitution, of So–Called "Head Shop" Ordinances or Statutes, Prohibiting Manufacture and Sale of Drug Use Related Paraphernalia,* 69 ALR Fed. 15 (1984).

**14.** *See supra* n. 10.

grand jury certain exculpatory evidence in the form of two polygraph examinations that tended to show defendant's truthfulness in denying commission of the charged offenses. On these facts, the court declined to dismiss the indictment, noting that the polygraph tests did not "clearly negate[ ] the target's guilt." 532 F.Supp. at 1136. The court in *United States v. Olin Corp.*, 465 F.Supp. 1120 (W.D.N.Y.1979), also denied relief because it found no breach of the prosecutor's duty "to present to the grand jury evidence that clearly negates guilt." 465 F.Supp. at 1127. Significantly, that court also acknowledged that prosecutors are not obliged to sift through all the evidence to find exculpatory material, nor do they have any duty to present a defendant's version of the facts. 465 F.Supp. at 1128. *United States v. Mandel*, 415 F.Supp. 1033 (D.Md.1976),[15] is essentially similar. There, the court noted its disagreement with the notion that a prosecutor must present to the grand jury *all* evidence that might be exculpatory. 415 F.Supp. at 1040. The fourth of the cases denying post-indictment relief is the least apposite. In *United States v. Ciambrone*, 601 F.2d 616 (2d Cir.1979), a defendant convicted of perjury sought reversal of his conviction on the ground that the prosecutor had misled the grand jury by omitting to reveal, in response to the jury's inquiry, that defendant had been coerced by threats to give the perjured testimony. In denying relief, that court characterized the threats as "rumored" and noted that the claims of coercion had been rejected by the trial jury. 601 F.2d at 625.[16] All four of these decisions denying post-indictment relief are consistent with the result and rationale of this decision.

The same may be said of the three cases movants rely on where post-indictment re-

lief was granted. Two of the three granted relief after finding a due process violation. The same result would obtain under the stringent test applied here. Thus, in *New Jersey ex rel. Kudisch v. Overbeck*, 618 F.Supp. 196 (D.N.J.1985), a writ of habeas corpus issued because the prosecutor did not inform the grand jury that the principal grand jury prosecution witness had recanted his confession, the central piece of evidence supporting the indictment.[17] And, in *United States v. Phillips Petroleum Co.*, 435 F.Supp. 610 (N.D.Okla. 1977) the court found due process violated in a tax fraud prosecution where the prosecutor continued questioning a witness after the jury had been excused for the day and did so in the presence of unauthorized persons. Then, to make matters worse, the prosecutor did not provide the grand jury with the exculpatory testimony given by this witness in the course of the improper rump session.

The third of the cases in which post-indictment relief was granted is the one on which movants rely most heavily. That case, *United States v. Gold*, 470 F.Supp. 1336 (N.D.Ill.1979), will not bear this burden. There, the court cited multiple grounds for dismissing the indictment. Principal among these grounds, and sufficient by itself, was the prosecutor's conflict of interest; he acted improperly as both lawyer and witness before the grand jury. Another of the many grounds cited for relief was the failure to present exculpatory evidence to the grand jury, including a National Academy of Sciences report. It is doubtful that this ground, standing alone, would warrant post-indictment (and, *a fortiori* pre-indictment) relief. There is no discussion of the report's contents, nor any explanation of its importance to the issue of guilt or innocence. Instead, the report

---

**15.** Though this case has a substantial subsequent history, none of the multiple appeals taken concerned the pretrial motions that were the subject of this opinion.

**16.** The *Ciambrone* court also found significant the fact that defendant had been invited to testify before the grand jury and his lawyer had been accorded the opportunity to submit his contentions. 601 F.2d at 625.

**17.** *United States v. Basurto*, 497 F.2d 781, 785–86 (9th Cir.1974) is similar. There, also consistent with the test enunciated here, the court held that an indictment cannot stand if obtained on the basis of testimony the prosecutor knows to be perjured.

**1276**

is merely lumped together with two other pieces of exculpatory evidence, the nondisclosure of which was held to "taint" the indictment. 470 F.Supp. at 1353. In summary, all of movants' authorities are sharply distinguishable as post-indictment cases. Quite apart from this distinction, none of the cases points persuasively to the result movants seek here; rather, all are consistent with the rationale and result in this case.

IV.

Courts have supervisory powers over grand jury proceedings. They must have these powers to ensure the fundamental fairness implicit in the Fifth Amendment's prohibition that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury...." But these powers are limited, especially at the pre-indictment stage, in recognition of the need for grand jury independence and efficiency and of the broad discretion prosecutors enjoy in selecting and presenting evidence. Accordingly, courts should exercise the power to interfere with ongoing grand jury proceedings and to direct the presentation of certain exculpatory evidence only where necessary to prevent a due process violation or a manifest miscarriage of justice. Neither of these dire consequences occurred when the government chose not to present the ITC Report to the grand jury. Movants' motion must therefore be denied.

An appropriate order has issued.