The STATE OF NEW JERSEY on the Relation of Alan E. KUDISCH on the Behalf of Julio VARGAS, Petitioner,

v.

Albert A. OVERBECK, Warden, Hudson County Jail, and Irwin I. Kimmelman, Attorney General of the State of New Jersey, Respondents.

Civ. A. No. 85–1714.

United States District Court,
D. New Jersey.

Sept. 4, 1985.

Court a Proposed Final Judgment in accordance with this Order.

Fishman & Kudisch by Alan E. Kudisch, Kew Gardens, N.Y., for petitioner.

Irwin I. Kimmelman, Atty. Gen. of N.J. by Mildred Vallerini Spiller, Deputy Atty. Gen., Trenton, N.J., for respondents.

197

OPINION

CLARKSON S. FISHER, Chief Judge.

Julio Vargas, convicted of conspiracy to commit aggravated arson, making payment for the purpose of starting a fire, and reckless endangerment by arson, has filed a petition for a writ of *habeas corpus.* Although the petition is grounded on three arguments, the parties and the court have focused on the issue of whether the prosecutor's failure to inform the Grand Jury of exculpatory evidence of which he was aware violated the defendant's guarantees of due process under the Fifth and Fourteenth Amendments. After consideration of the papers filed and oral argument, this court concludes that the prosecutor committed error that rose to a level of constitutional magnitude. Accordingly, the petition for a writ of *habeas corpus* is granted.

After the Hoboken police department and fire marshals investigated a fire that destroyed Julio Vargas' grocery store, a Hudson County Grand Jury returned an indictment naming five men, including Vargas, as defendants. Upon reading the minutes of the Grand Jury proceedings, Vargas' attorney, Mr. Kudisch, filed a motion *in limine* to dismiss the indictment on the grounds that the prosecutor failed to inform the Grand Jury of exculpatory evidence and that the evidence presented to the Grand Jury was insufficient to sustain the indictment. The Superior Court of New Jersey, Law Division, however, denied defendant's motion, and Vargas was tried before a jury in that court in June 1982. On June 24, 1982, the jury returned verdicts of guilty on the charges mentioned above, and on October 15, 1982, the Superior Court sentenced Vargas to a term of 15 years with 5 years of parole ineligibility. The other four defendants had entered into plea negotiations with the State, and in return for the State's willingness to plea bargain, each of the other four defendants, all of whom received lighter sentences than Vargas, agreed to testify against any defendant who proceeded to trial.

Immediately after the sentencing, Vargas appealed to the Appellate Division of the Superior Court. He raised the same arguments in the Appellate Division as are pressed now in the petition for a writ of *habeas corpus.* Vargas argued that the prosecutor violated his due process rights by withholding exculpatory evidence from the Grand Jury, that his attorney was not informed until late in the trial that the fire marshal's report revealed that no accelerant was found at the scene of the fire, and that one attorney's representation of two alleged co-conspirators created a patent conflict of interest. In an unpublished per curiam opinion filed February 14, 1984, the Appellate Division rejected these contentions and affirmed the conviction. A petition for certification to the New Jersey Supreme Court raising these same arguments was filed, but it was denied on May 16, 1984. *State v. Vargas,* 97 N.J. 602, 483 A.2d 140 (1984). Vargas' claims before this court are those that were raised in the state courts. He has therefore exhausted his state remedies and his *habeas* petition is properly before this court. *See Santana v. Fenton,* 685 F.2d 71, 73–74 (3d Cir.1982), *cert. denied,* 459 U.S. 1115, 103 S.Ct. 750, 74 L.Ed.2d 968 (1983).

The relevant facts of the alleged crime were set forth succinctly by the Appellate Division in its decision affirming the conviction:

> Defendant operated a small supermarket which was substantially insured when destroyed by fire of suspicious origin. The co-conspirator Santos owed a debt to defendant and in order to obtain forgiveness of the debt he was allegedly induced by defendant to solicit the other three co-conspirators to burn the business. When implicated by the co-conspirators Santos confessed to his involvement and outlined the entire scheme inculpating this defendant. After he had given the statement however he refused to sign it stating it was not true and that he only made it in order to obtain his release from police custody and to protect his family. Thereafter Santos once more reversed his position, cooperated with law enforcement officials, and testified against defendant at trial.

*State v. Vargas,* No. A–638–82T4, slip op. at 2 (App.Div., Superior Court of New Jersey, February 14, 1984). The parties are in agreement that the evidence presented to the Grand Jury supporting the indictment consisted principally of the fact that Vargas' grocery store, which was suffering financially, burned by non-accidental means, and of co-conspirator Santos' statement to the police that he was induced by Vargas to solicit the other co-conspirators to set fire to the grocery store. It is uncontested that immediately after Santos made a statement to the police implicating himself and Vargas, the police told Santos that they were going to type the statement so he could sign it, but Santos refused, insisting that the statement was false and was made only so that he would be released and able to rejoin his family. There is no dispute that Officer O'Neill, who testified before the Grand Jury, and the prosecutor, were aware of Santos' recantation, but the Grand Jury was never informed of this fact.

Contesting Vargas' due process claim, the State has posited two arguments. First, the State has cited a line of cases for the proposition that the prosecutor had no duty to inform the Grand Jury of Santos' recantation. Second, the State has observed that the petit jury, after defense counsel had an opportunity to examine and cross-examine at trial, found Vargas guilty beyond a reasonable doubt. Therefore, the State has asserted that, even if the prosecutor erred, such error was "harmless." These arguments shall be considered seriatim.

██ It is undisputed, as the State maintains, that the Grand Jury proceeding is not an adversarial hearing to determine guilt or innocence, and an indictment, which is not evidence of guilt, is a finding that probable cause exists that a crime has been committed by the accused, *United States v. Romano,* 706 F.2d 370, 374 (2d Cir.1983); *United States v. Ciambrone,*

601 F.2d 616, 622 (2d Cir.1979). Respecting the Grand Jury proceedings, the prosecutor may exercise considerable discretion in determining what should be presented to the Grand Jury, and the prosecutor is not obligated "to search for and submit to a grand jury evidence favorable to the defense or negating guilt, when it has not been requested by the Grand Jury." *Ciambrone,* 601 F.2d at 622; *United States v. Litman,* 547 F.Supp. 645, 649 (W.D.Pa.1982).[1] In addition, the prosecutor's discretion in this regard is generally circumscribed only if it appears that the prosecutor "knowingly" used perjurious testimony to secure the indictment, or substantial evidence negating guilt was not presented to the Grand Jury. *See Romano,* 706 F.2d at 374; *United States v. Purvis,* 544 F.Supp. 68, 72 (S.D.N.Y.1982). The State thus concludes from these cases that Officer O'Neill's testimony before the Grand Jury was truthful, the prosecutor did not refuse willfully to disclose material information sought by the Grand Jury, and that the thrust of Vargas' claim, that the prosecutor has a duty to search for and present to the Grand Jury any and all evidence favorable to the accused, is unsupported by law.

The material fallacy in the State's argument is that no searching for exculpatory evidence was required in the instant case. The fact that Santos recanted his statement was readily apparent to the prosecutor, as he and Officer O'Neill had this information in their possession. Although Officer O'Neill's testimony before the Grand Jury respecting Santos' confession was true, given Santos' immediate recantation, of which the Grand Jury was not informed, the evidence presented to the Grand Jury constituted merely a half-truth.

By failing to furnish the exculpatory evidence of which he was aware, the prosecutor presented a case to the Grand Jury that was incomplete and misleading.

This court acknowledges that there are cases holding that the prosecutor does not have a duty to present any exculpatory evidence to the Grand Jury. *United States v. Sears, Roebuck & Co., Inc.,* 719 F.2d 1386, 1390–91, 1394 (9th Cir.1983), *cert. denied,* 465 U.S. 1079, 104 S.Ct. 1441, 79 L.Ed.2d 762 (1984); *United States v. Al Mudarris,* 695 F.2d 1182, 1185 (9th Cir. 1983); *United States v. Cederquist,* 641 F.2d 1347, 1353 n. 3 (9th Cir.1981). Other courts tend to the view that although an indictment may be dismissed if the prosecutor fails to present exculpatory evidence to the Grand Jury, at least if the circumstances are egregious, an accused's liberties are adequately safeguarded by the petit jury. If the petit jury finds the accused guilty beyond a reasonable doubt and convicts, then the accused cannot claim prejudice by virtue of an impropriety at the Grand Jury stage, and a court should not overturn the conviction. *See Ciambrone,* 601 F.2d at 625; *United States v. Polizzi,* 500 F.2d 856, 888 (9th Cir.1974), *cert. denied,* 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975). *See also United States v. Kennedy,* 564 F.2d 1329, 1338 (9th Cir.1977), *cert. denied,* 435 U.S. 944, 98 S.Ct. 1526, 55 L.Ed.2d 541 (1978). Moreover, there is a line of authority holding that a prosecutor does have a duty to present exculpatory evidence of which he is aware to the Grand Jury. *Ciambrone,* 601 F.2d at 623; *Litman,* 547 F.Supp. at 649; *United States v. Gold,* 470 F.Supp. 1336, 1353 (N.D.Ill.1979); *United States v. Phillips Petroleum Co.,* 435 F.Supp. 610, 619–22 (N.D.Okla.1977).

---

**1.** The trial judge in *Litman* refused to dismiss the indictment against defendants, whose appeal was dismissed by the Third Circuit on the grounds that the district court's refusal to grant the motion was not an appealable order. *United States v. Litman,* 661 F.2d 17, 18–19 (3d Cir.1981). Rather than holding "that denial of a motion to dismiss an indictment on grounds of gross prosecutorial misconduct may never be immediately appealable," *id.* at 19, the Third Circuit noted that a prior panel had rejected the

merits of defendants' claims in their petition for a writ of mandamus or prohibition, and, therefore, the prior panel's disposition rendered it inappropriate for the court to consider the merits of defendants' arguments. The Third Circuit cited the prior panel's disposition as *Litman and Portnoy v. Weber,* No. 81–1526 (3d Cir. April 23, 1981). *See* 661 F.2d at 18 n. 1. On January 11, 1982, the Supreme Court denied certiorari. 454 U.S. 1150, 102 S.Ct. 1016, 71 L.Ed.2d 304 (1982).

These cases emphasize that while the Grand Jury proceeding is not a mini-trial to determine guilt or innocence where the accused is given an opportunity as of right to present his case, a prosecutor who withholds exculpatory evidence destroys the existence of an independent and informed jury. Without information material to its determination, the Grand Jury cannot protect citizens from malicious prosecution, and the interests of justice are not served. *See Ciambrone,* 601 F.2d at 623, and at 628–29 (Friendly, J. dissenting); *Gold,* 470 F.Supp. at 1353; *Phillips Petroleum Co.,* 435 F.Supp. at 618–21. In fact, the Third Circuit, in addition to the Second and Ninth Circuits, has stated that an indictment may be dismissed "in the exercise of the [court's] supervisory power ... to correct flagrant or persistent abuse, despite absence of prejudice to the defendant...." *United States v. Serubo,* 604 F.2d 807, 817 (3d Cir.1979). *Accord United States v. Hogan,* 712 F.2d 757, 761 (2d Cir.1983); *United States v. Fields,* 592 F.2d 638, 647 (2d Cir.1978), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2838, 61 L.Ed.2d 284 (1979); *Cederquist,* 641 F.2d at 1352–53.

■ In order to prevail on the merits of his petition, Vargas must demonstrate that

> at the time the Government presented its case to the grand jury, the prosecutor was aware of the existence of exculpatory evidence which could reasonably lead the grand jury not to indict and that he deliberately failed to include it or, at a minimum, to notify the grand jury of its existence.

*Litman,* 547 F.Supp. at 650. At the time the prosecutor presented his case against Vargas to the Grand Jury, Santos' confession was a principal piece of evidence. Had the Grand Jury been informed of Santos' recantation, the Grand Jury, in this court's view, reasonably could have given little or no weight to the confession in which Vargas was implicated, and concluded that there was no probable cause to charge Vargas. The State has responded by pointing to the fact that even if the prosecutor misled the Grand Jury by failing to present exculpatory evidence, any error must be "harmless" in light of the petit jury's finding that Vargas was guilty beyond a reasonable doubt. At the trial, Santos, who by that time had pleaded guilty, testified against Vargas. In addition, Officer O'Neill also testified that Santos recanted his original statement implicating himself and Vargas. Therefore, the State has urged, citing *Ciambrone,* if the petit jury found Vargas guilty beyond a reasonable doubt, then there cannot be a reasonable probability that the Grand Jury would not have found probable cause to charge Vargas.

The defendant in *Ciambrone* was charged with perjuring himself under oath while testifying as a witness in a criminal case. *Ciambrone,* 601 F.2d at 618. Defendant's defense was that he "had been coerced by threats against his life into giving the alleged perjurious testimony at the *Blasich* trial...." *Id.* Defendant claimed that the prosecution was well aware of these threats but refused to present this information to the Grand Jury, instead intimating to the Grand Jury that defendant "was motivated to testify falsely at the *Blasich* trial because of his friendship with Blasich." *Id.* at 618, 622. Although the trial judge instructed the petit jury "that coercion or compulsion may constitute a legal excuse", the judge refused to dismiss the indictment. *Id.* at 621. Affirming the district court, the Second Circuit concluded from its examination of the record that the prosecutor who presented the case to the Grand Jury was unaware that other government employees had information that defendant had been threatened, and that the prosecutor's responses to the grand jurors' inquiries were his honest views, and "[fell] far short of misleading conduct or deception that would call for dismissal of the indictment in the present case." *Id.* at 623–24. The Second Circuit buttressed its conclusion that there was no deliberate omission on the prosecutor's part by pointing out that defendant was invited to testify before the Grand Jury, and his lawyer was invited to submit his contentions. *Id.* at 625. Finally, the Sec-

ond Circuit held that any error would not warrant dismissal of the indictment, because if the petit jury rejected defendant's duress and coercion defenses and found him guilty beyond a reasonable doubt, then "the grand jury would surely have found probable cause to charge him with perjury". *Id.*

In a strong dissent, Judge Friendly wrote that not only was the prosecutor who presented the case to the Grand Jury aware that threats had been made against defendant, but also that in any event other members of the prosecution team were aware of the threats, and the prosecutor before the Grand Jury "cannot be insulated from the rest of the prosecution team...." *Ciambrone*, 601 F.2d at 627–28 (Friendly, J., dissenting). The record, according to Judge Friendly, indicated that the prosecutor evaded the grand jurors' questions, and failed to respond fully and fairly to their requests for advice. *Id.* at 628–29. He concluded that if the prosecutor had disclosed the threats made to defendant, then "even with all the qualifications which the Government was entitled to put forward," there was a "strong prospect" that the Grand Jury would not have found probable cause, and that "[a] substantial possibility of this is all that is needed to warrant our quashing the indictment." *Id.* at 629.

This court agrees with the position espoused by Judge Friendly, and adopts the view also that although a petit jury convicted an accused is relevant to an enquiry of whether a Grand Jury would have indicted, that fact is not conclusive. It does not follow necessarily that the Grand Jury would have indicted merely because the petit jury convicted, the higher burden of proof required for a conviction notwithstanding. It is true that Santos testified at trial, that his testimony was corroborated by a co-indictee, that the petit jury was informed of Santos' recantation, and that the petit jury found Vargas guilty beyond a reasonable doubt. Nonetheless, the issue before this court is not whether the evidence at trial supported the conviction. Rather, the relevant inquiry, as noted in *Litman,* is whether "*at the time the*

*Government presented its case to the grand jury,* the prosecutor was aware of the existence of exculpatory evidence which could reasonably [have led] the grand jury not to indict...." *Litman,* 547 F.Supp. at 650 (emphasis supplied).

It may be argued that the prosecution had a plethora of evidence supporting a conviction by the time Vargas was tried, but at the time of the Grand Jury proceeding, Santos' confession was a crucial piece of evidence. *Cf. United States v. Dunham Concrete Products, Inc.* 475 F.2d 1241, 1248–49 (5th Cir.1973) (indictment not dismissed because even if some of the testimony presented to grand jury was improper, that testimony constituted only a small portion of the evidence presented, "and appellants cannot, and in fact do not, dispute that at least some competent evidence was presented to the grand jury"); *Romano,* 706 F.2d at 374 (appellants never contended that entrapment defense, labeled "frivolous" by the trial judge, would have caused the Grand Jury not to indict if defense had been presented); *United States v. Purvis,* 544 F.Supp. 68, 72 (S.D.N.Y. 1982) (tape calling into doubt defendants' involvement in an unidentified drug sale, trial judge held, would not have led Grand Jury not to indict because the tape "[did] not counter [defendant's] original enlistment in the conspiracy charged"). It is this court's conclusion that had the Grand Jury been informed of Santos' repudiation, there would be a reasonable probability or substantial possibility that Vargas never would have been indicted.

■ The view that an accused cannot claim error respecting improprieties at the Grand Jury proceeding if the petit jury in fact convicts is unsupportable. If courts take the position that the petit jury affords an accused adequate safeguards against constitutional violations, then it is unclear what purpose the Grand Jury serves. *See* Note, "Grand Jury Proceedings: The Prosecutor, the Trial Judge and Undue Influence," 39 U.Chi.L.Rev. 761, 775 (1972). *See also Polizzi,* 500 F.2d at 888. If the mod-

ern Grand Jury has no reason for being, then the burden is on the people and their legislatures, by statute and constitutional provision, to do away with the Grand Jury. It is not the courts' function to eviscerate the Grand Jury's role of "protect[ing] citizens from malicious prosecutions...." *Gold,* 470 F.Supp. at 1353; Note, 39 U.Chi. L.Rev. 761, 775.

Vargas has met his burden of establishing that the prosecutor failed to present exculpatory evidence of which he was aware, and that there is a reasonable probability that had the Grand Jury considered that information, it would not have returned an indictment. Vargas' due process rights have been violated. The violation is of constitutional magnitude, and therefore, the petition for a writ of *habeas corpus* is granted and the indictment against petitioner is dismissed.